566 P.2d 1337
Kenneth McKELLAR, Appellant,

v.

ARIZONA STATE DEPARTMENT OF
CORRECTIONS, Appellee.

No. 12954.

Supreme Court of Arizona,
En Banc.

July 14, 1977.

William C. Porter, Kingman, for appellant.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

HAYS, Justice.

Appellant Kenneth McKellar appeals from the denial of the Mohave County Superior Court to issue him a writ of habeas corpus. We affirm that denial.

On April 2, 1973, appellant pled guilty to a violation of A.R.S. § 36–1002.02, sale of heroin, the penalty for which is (for a first offense):

"  .  .  .  imprisonment in the state prison from five years to life, and shall not be eligible for release  .  .  .  on parole or any other basis until he has served not less than five years in prison."

This, of course, requires that no matter what penalty appellant received,[1] he has to spend a mandatory five years in the state prison. *State v. Deddens*, 112 Ariz. 425, 542 P.2d 1124 (1975).

This case is almost on all fours with *Deddens* factually. Appellant, however, raises two issues not raised by *Deddens* in addition to one raised and disposed of therein. There is one factual difference though; the Board of Pardons and Paroles did not have the benefit of the *Deddens* opinion when the appellant therein was illegally released from prison. *Here, they did.*

The facts of this case are as follows:

In June, 1976, some seven months after the *Deddens* decision, appellant was granted a parole by the Board of Pardons and Paroles, pursuant to an incorrect computation of the date on which he would be eligible for parole. This release was presumably based, as in *Deddens*, on his "time and a half" and "good time" pursuant to A.R.S. §§ 31–251 and 252, which we determined in *Deddens* were not applicable before the minimum five years were spent.

Appellant returned to his parents' home, promptly obtained a well-paying job, ap-

plied for a grant to return to college, regularly maintained a mental health program (required because of his previous addiction to drugs) and incurred legally binding obligations by way of purchasing an automobile with the permission of his parole officer. In short, he conducted himself as a model parolee for two and one-half months.

On September 30, 1976, appellant was summarily taken back into custody when the corrections authorities realized their error. He was afforded no hearing until the habeas corpus proceeding in November, 1976. He raised there, and raises again on appeal, three issues:

1. Did the computation of appellant's parole eligibility date constitute an ex post facto application of an administrative legal determination?

2. Did the state's negligence in performing its custodial duties render appellant's reincarceration cruel and unusual punishment?

3. Did the state's actions in seizing and reincarcerating appellant without a hearing violate due process?

## EX POST FACTO

The appellant complains that an application is being made to him, ex post facto, of a different and harsher standard for computing eligibility dates than the standard used at the time he was incarcerated.[2] This contention is satisfactorily answered by our decision in *State v. Deddens, supra,* and we decline to review and reverse that opinion as appellant has requested us to do.

## CRUEL AND UNUSUAL PUNISHMENT

Appellant further argues that not the original penalty, but the negligent method used by the state in carrying out the sentence, was very unusual and cruel to the

---

1. In fact, appellant received a sentence of ten years to life.

2. Appellant was initially incarcerated over two years before the *Deddens* decision.

appellant and his family, in that it caused extreme emotional trauma to both.

■ Penalties inflicted on a convicted felon are often "cruel" to his or her family. Neither the Eighth Amendment to the United States Constitution nor Article 2, § 15 of the Arizona Constitution contemplates the traumas and hardships imposed on the family of the convict; they are concerned only with the punishment inflicted on the prisoner.

■ The method by which a punishment is carried out is subject to judicial scrutiny under the cruel and unusual clause. *See Hernandez v. State,* 43 Ariz. 424, 32 P.2d 18 (1934); *State of Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947). There is no question but that the error which caused the reincarceration of appellant was the state's alone. The state did not, however, methodically and purposefully plan to cause appellant further punishment or penalty by its mistake. Here, as in *State of Louisiana ex rel. Francis v. Resweber, supra,* (a much more serious case of state error), the state did not intentionally inflict unnecessary emotional pain on appellant. As the United States Supreme Court decided in *Resweber,* we find that this mistake simply does not rise to that level of unconstitutionality which is forbidden by the "cruel or unusual" clauses of the Arizona and United States Constitutions. It is not punishment "so severe as to shock the moral sense of the community . . . ." *State v. Espinosa,* 101 Ariz. 474, 477, 421 P.2d 322, 325 (1966).

## DUE PROCESS

This is a very difficult issue, especially in light of *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which gives parolees an "interest . . . within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. . . . " 408 U.S. at 481, 92 S.Ct. at 2600. It clearly stands for the proposition that even the conditional freedom of a parole from prison cannot be revoked without some minimal amount of procedural due process.

The questions before us are difficult. Where a mandatory minimum sentence has not yet been served, and a prisoner is released illegally on parole, is he still entitled to minimal due process before he's taken back into custody? If so, what would the issues be at such a hearing? Neither appellant's nor the state's briefs were of assistance to us, and we find no cases on point.

There are some cases where on "credit," "waiver" and "estoppel" theories, the state was prohibited from reasserting jurisdiction over prisoners wrongfully released. *See, e. g., Lanier v. Williams,* 361 F.Supp. 944 (D.C., 1973). Those were, however, extreme cases where the prisoner believed he was completely free and many years passed before the government sought to exact the penalty owed it. Because of the outrageous neglect of the government in those instances, the courts relied on substantive due process to prohibit further penalty.

■ Here, however, appellant's release was for less than three months. As soon as its mistake was realized, the state reasserted custody of appellant; it clearly never lost jurisdiction.

■ If appellant were granted a hearing before the revocation, pursuant to *Morrissey v. Brewer, supra,* what would the issue be? Appellant has committed no wrong, so the state could allege none. The state would have to assert the fact that appellant has not yet served the mandatory five years he owes, and to that assertion appellant has no defense. In essence, granting appellant "procedural" due process in this instance would be to grant him nothing.

We see no solution to this unfortunate situation. We can find no authority which would allow us to order disobedience to the mandatory provisions of A.R.S. § 36–1002.-

02. Consequently, we must affirm the trial court's decision denying a writ of habeas corpus.

█ The state's error must not, however, work to appellant's further detriment since he was in no way at fault. He shall be credited with the time he was illegally paroled toward the mandatory five years. *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930).

Affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.