816 P.2d 267

Thomas Boyd TITTLE, Plaintiff–Appellant,

v.

STATE of Arizona, a body politic; Arizona Department of Corrections, an agency of the State of Arizona; and Samuel A. Lewis, Director, Arizona Department of Corrections, Defendants–Appellees.

No. 1 CA–CV 90–206.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 20, 1991.

Thomas Boyd Tittle, in pro. per.

Grant Woods, Atty. Gen. by Lynne W. Abney, Asst. Atty. Gen., Phoenix, for defendants-appellees.

OPINION

VOSS, Judge.

The issue here is whether appellant, Thomas Boyd Tittle, whose conviction and death sentence were reversed and remanded on appeal, 147 Ariz. 339, 710 P.2d 449, is entitled to good time credit, if deserved, in addition to credit for time served, when he is resentenced for a crime under which he could have received good time credit. We hold that Tittle is entitled to good time credits, if deserved, for the time spent on death row because the death sentence is now a nullity and he would have been eligible for good time credits had there been no trial court error.

The trial court, relying on the Arizona Administrative Code, section R5–1–402(C)(6), which disallows good time credit for death row inmates, held that Tittle was not entitled to receive good time credits for the time he spent on death row. Tittle seeks review of the trial court's decision.

On review of a trial court's denial of special action relief, we must uphold the trial court's action if there is a valid reason for such action. *Armstrong v. City Court of the City of Scottsdale*, 118 Ariz. 593, 578 P.2d 1022 (App.1978). We find no valid reason for the trial court's actions and remand with instructions.

Tittle was convicted of first degree murder and of armed robbery and was sentenced to death for the murder conviction. Pending his appeal he was imprisoned for 1,974 days. The Arizona Supreme Court reversed his murder conviction because the jury received an incorrect self-defense instruction. Tittle then pled guilty or was

retried, the record is unclear, and was convicted of second degree murder and robbery. At sentencing the trial court gave him credit for the 1,974 days he spent on death row.

Tittle argues that he should have received an additional 459 days of credit, which represents the good time credit he would have received had he initially been convicted of second degree murder and fulfilled the DOC requirements for eligibility to receive good time credit. Citing *McKellar v. Arizona State Department of Corrections*, 115 Ariz. 591, 566 P.2d 1337 (1977) and *State v. Davis*, 148 Ariz. 62, 712 P.2d 975 (App.1985), Tittle asserts that an error by the state, in this case a trial court error, cannot work to his detriment in the calculation of his release date. He also maintains that A.R.S. § 13–709(C), which provides that a defendant shall receive credit for all time served under a vacated sentence when he or she is resentenced for the same offense, entitles him to good time credit.

Appellee, the State of Arizona, argues that Tittle is not eligible for good time credits because he was a death row inmate and pursuant to A.A.C. R5–1–402(C)(6), those inmates are ineligible for good time credits. The state also argues that A.A.C. R5–1–403(G), which provides that once a sentence of death is modified, the inmate is processed through normal initial parole classification procedures, prevents Tittle from receiving retroactive good time credits because the code section, by its terms, requires that Tittle be initially classified upon modification of his death sentence. The state maintains that *McKellar* and *Davis* are inapposite because in the present case there was no computational error by the state or failure by Arizona authorities to act on a detainer.

The state also contends that section 13–709(C) is inapplicable because Tittle was not serving a sentence of imprisonment but rather a death sentence and because he was not charged with the same offense, his new conviction being for second degree murder. The state further maintains that in any event DOC complied with section 13–709(C) because Tittle received credit for all time served under the vacated sentence and nothing in that section requires that he also receive retroactive good time credits.

We agree with Tittle. First, we find that section 13–709(C) is applicable. It provides:

C. If a sentence of imprisonment is vacated and a new sentence is imposed on the defendant for the same offense, the new sentence is calculated as if it had commenced at the time the vacated sentence was imposed, and all time served under the vacated sentence shall be credited against the new sentence.

■ A statute must be read so as to give it a fair and sensible meaning. *State v. Garza Rodriguez*, 164 Ariz. 107, 791 P.2d 633 (1990). If possible, we must give meaning to each statutory clause and consider effects and consequences as well as the spirit and purpose of the law. *Id.* A pragmatic construction of a statute is required if a technical construction would lead to absurdity. *State v. Weible*, 142 Ariz. 113, 688 P.2d 1005 (1984).

The state's interpretation of the statute is too restrictive and logically inconsistent. Regardless of the classification of the crime for which Tittle was serving a sentence, he was serving a sentence of imprisonment. To argue that he was not is to ignore where he was incarcerated pending his appeal or the imposition of death. Furthermore, although the statute refers to credit given after a sentence is vacated and a new sentence is imposed for the same offense, it would be unfair to Tittle to hold that a conviction for a different offense arising from the same act would void all credit he could receive on the death sentence. We cannot believe our legislature would intend such a result. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (when a sentence is vacated and a new sentence for the same offense is given, the inmate must get credit for the time served including good time credit because the original conviction has been wholly nullified and the slate wiped clean). Here, Tittle did receive credit for time served under the death sentence, even though, according to the state, he was

not charged with the same offense. He logically received credit for time served as the second degree murder conviction was based on the same conduct as the death sentence. *See The Uniform Law Commissioners' Model Sentencing and Corrections Act,* § 3–502(e) (1979) (if sentence is set aside and the offender is reprosecuted or resentenced for the same offense or for another offense based on the same conduct, he must be given credit against new sentence).

Recently, in *Voyles v. State,* 520 So.2d 501 (Miss.1988), the Mississippi Supreme Court was presented with a case identical to the one we decide today. Voyles was sentenced to death. In Mississippi a death row inmate is ineligible for good time credits. Voyles filed a writ of habeas corpus claiming ineffective assistance of counsel, which was granted. He then pled to manslaughter. Subsequently, he filed a second writ of habeas corpus claiming he was denied earned good time credits from the time he was sentenced to death until he was resentenced to manslaughter.

█ The court held that since Voyle's conviction and sentence were illegal, his confinement on death row was improper. The court stated that if Voyles had not been on death row, he would have been eligible for consideration for earned time credit, therefore, the court held that full earned time credit must be given Voyles, if deserved, for the years of incarceration on death row. We adopt the sound reasoning of *Voyles.*

Arizona courts have also expressed an intent to disallow an error by the state to work to the detriment of an inmate in the computation of a release date. In *McKellar,* an inmate was mistakenly released because his parole time was incorrectly calculated. He was reincarcerated and the court held that his sentence must be credited with the time he was illegally paroled.

In *Davis,* an inmate was serving concurrent Texas and Arizona sentences. The Arizona sentence was longer. Upon release from prison in Texas, Arizona neglected to secure custody to continue the Arizona sentence. The inmate was subsequently reincarcerated and we held that he was entitled to good time credits, as well as credit for time served, which he would have earned had Arizona not failed to secure him.

In the present case, and in *McKellar* and *Davis,* there were errors by state agencies, in our instance by the trial court, and in *McKellar* and *Davis* by correctional personnel. We do not think the types of errors in the three cases should lead to different results because different state agencies made the errors. All the errors lead to the same result: detrimental effect on an inmate's release date.

The state mistakenly relies on the administrative code regulations for its position. Had Tittle remained a death row inmate until completion of his sentence he would not have been entitled to good time credit. However, here there was an error which led to his being a death row inmate in the first instance. Since Tittle's death sentence is a nullity and the slate is wiped clean, he was never a death row inmate for time computational purposes and thus we find R5–1–402(C)(6) inapplicable. We also find R5–1–403(G) inapplicable because Tittle's sentence was not modified, but vacated and remanded on appeal.

The trial court's order is set aside and the trial court is directed to order DOC to compute credits for Tittle, if deserved, as required by this Opinion from the date his death sentence commenced to the date his second degree murder conviction sentence commenced.

CLABORNE, P.J., and TAYLOR, J., concur.