872 P.2d 668

**Maxine HAYES, a single person, Plaintiff–Appellant,**

v.

**CONTINENTAL INSURANCE COMPANY, a corporation, Defendant–Appellee.**

No. CV–92–0199–PR.

Supreme Court of Arizona, En Banc.

April 21, 1994.

Arnett & Arnett by Mark W. Arnett, Wayne C. Arnett, Tempe, for plaintiff-appellant.

David J. Gilchrist, Phoenix and Grossman, O'Grady & McGoldrick by Michael J. O'Grady, Paul McGoldrick, Scottsdale, for defendant-appellee.

Broening, Oberg & Woods, P.C. by Neal B. Thomas and Robbins & Shumway, by Joel B. Robbins, Phoenix, for amicus curiae James Tucker.

Ely, Bettini, Ulman, Insana & Turley by Joseph M. Bettini and Tony Zimbalist, Phoenix, for amicus curiae Arizona Ass'n of Lawyers for Injured Workers.

Ridenour, Swenson, Cleere & Evans by John T. Moshier, Phoenix, for amicus curiae Arizona Ass'n of Defense Counsel.

## OPINION

FELDMAN, Chief Justice.

This case turns on the interpretation of A.R.S. § 23–930, a statute regulating bad faith claims asserted against workers' compensation carriers. We granted review in this case, and in the companion cases of *Doskocz v. Birmingham Fire Ins. Co.*, No. CV–92–0238–PR, and *Ring v. State Compensation Fund*, No. CV–92–0256–PR, to determine how A.R.S. § 23–930 should be applied and whether it violates our constitution. These are questions of first impression and statewide importance. *See* Ariz.R.Civ.App.P. 23(c)(4). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

The facts of this case are few and uncontroverted. In 1987, Maxine Hayes ("Plaintiff") suffered a back injury at work and subsequently filed a claim for workers' compensation benefits. Her employer's compensation carrier, Continental Insurance Co. ("Defendant"), denied her claim. At an Industrial Commission hearing, Defendant provided no justification for the denial. After Defendant refused Plaintiff's demands for payment, Plaintiff brought a tort action for damages, alleging that Defendant had acted in bad faith by intentionally withholding payment without reasonable justification. Defendant moved to dismiss for lack of subject matter jurisdiction, asserting that A.R.S. § 23–930 divests state courts of all jurisdiction over such actions.

Plaintiff opposed the motion, arguing that the statute abrogates her cause of action for bad faith and limits her recoverable damages, thus violating Ariz. Const. art. 18, § 6, and art. 2, § 31. Plaintiff also alleged that the statute violates her right to a jury trial guaranteed by art. 2, § 23. Rejecting Plaintiff's arguments, the trial court held the statute constitutional, reasoning that art. 18, § 8 permits the legislature to restrict the remedies and procedures available to workers who did not reject workers' compensation coverage.[1] The trial judge therefore granted Defendant's motion to dismiss.

1. This issue may have difficult constitutional ramifications. Although art. 18, § 8 permits the legislature to enact a workers' compensation law, that power is limited in some respects by art. 18, § 6, which preserves the common-law right to recover damages, particularly if, as in the present case, the action is against someone other than the employer. *See Anderson v. Industrial Comm'n*, 147 Ariz. 456, 460–61, 711 P.2d 595, 599–600 (1985) (describing the history of art. 18, § 8 as originally adopted and as amended in 1925). *Cf. Dunn v. Industrial Comm'n*, 177 Ariz. 190, 196, 866 P.2d 858, 864 (1994) (art. 18, §§ 8 and 6 "work together"). The provisions of art. 18, § 8 accommodate and are restricted by the guarantees of art. 18, § 6 in actions against parties other than claimant's employer. Moreover, both the very words of art. 18, § 6 and the historical evolution of its present version act to circumscribe the legislature's power to enact

The court of appeals affirmed the trial court's ruling on different grounds, holding that the cause of action arising from an insurer's bad faith did not exist at the time our constitution was adopted and was therefore unprotected by the anti-abrogation provisions of art. 18, § 6. *Hays v. Continental Ins. Co.*, 172 Ariz. 573, 838 P.2d 1334 (1992). In reaching that conclusion, the court of appeals relied on *Bryant v. Continental Conveyor & Equip. Co.*, 156 Ariz. 193, 751 P.2d 509 (1988), which we subsequently overruled in *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993).

Plaintiff sought review of the court of appeals' opinion. In this court, the parties joined issue on a preliminary question: does § 23–930, properly interpreted, preempt the jurisdiction of our state courts to adjudicate bad faith claims against workers' compensation carriers? If not, there is no need to consider any constitutional issues. *See Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n*, 177 Ariz. 256, 259, 866 P.2d 1342, 1345 (1994) (constitutional question avoided because unnecessary to resolve appeal);

*Dunn v. Industrial Comm'n*, 177 Ariz. 190, 196, 866 P.2d 858, 864 (1994) (same). We therefore examine first the statute's proper interpretation.

## DISCUSSION

■ In two opinions, one filed before A.R.S. § 23–930 was adopted and one filed shortly thereafter, the Arizona Court of Appeals held that the exclusivity doctrine [2] does not bar common-law actions for bad faith against workers' compensation carriers. *Boy v. Fremont Indem. Co.*, 154 Ariz. 334, 742 P.2d 835 (Ct.App.1987); *Franks v. United States Fidelity & Guar. Co.*, 149 Ariz. 291, 718 P.2d 193 (Ct.App.1985). In 1987, our legislature enacted § 23–930.[3] Defendant argues that this statute deprives the courts of jurisdiction over Plaintiff's common-law action.

### A. The text of A.R.S. § 23–930

Plaintiff and amicus claim that the courts below mistakenly assumed that § 23–930 divests Arizona courts of jurisdiction in cases

---

workers' compensation laws. *See Dunn*, 177 Ariz. at 196, 866 P.2d at 864 (art. 18, § 8 requires compensation to be paid to both workers and their dependents); *see also Alvarado v. Industrial Comm'n*, 148 Ariz. 561, 564, 716 P.2d 18, 21 (1986); *Ford v. Industrial Comm'n*, 145 Ariz. 509, 517–18, 703 P.2d 453, 461–62 (1985).

2. Generally, workers' compensation is considered to be the exclusive remedy for an employee injured in a covered situation. *See* Arthur Larson, THE LAW OF WORKMEN'S COMPENSATION § 65.00 (1993).

3. A.R.S. § 23–930 provides:
    A. The commission has exclusive jurisdiction as prescribed in this section over complaints involving alleged unfair claim processing practices or bad faith by an employer, self-insured employer, insurance carrier or claims processing representative relating to any aspect of this chapter. The commission shall investigate allegations of unfair claim processing or bad faith either on receiving a complaint or on its own motion.
    B. If the commission finds that unfair claim processing or bad faith has occurred in the handling of a particular claim, it shall award the claimant, in addition to any benefits it finds are due and owing, a benefit penalty of twenty-five per cent of the benefit amount ordered to be paid or five hundred dollars, whichever is more.

C. If the commission finds that an employer, self-insured employer, insurance carrier or claim processing representative has a history or pattern of repeated unfair claim processing practices or bad faith, it may impose a civil penalty of up to one thousand dollars for each violation found. The civil penalty shall be deposited in the special fund.
    D. Any party aggrieved by an order of the commission under this section may request a hearing pursuant to § 23–947. The hearing and decision shall be conducted pursuant to the provisions of § 23–941.
    E. The commission shall adopt by rule a definition of unfair claim processing practices and bad faith. In adopting a rule under this subsection, the commission shall consider, among other factors, recognized and approved claim processing practices within the insurance industry, the commission's own experience in processing workers' compensation claims and the workers' compensation and insurance laws of this state.
    F. This section shall not be construed as limiting or interfering with the authority of the department of insurance as provided by law to regulate any insurance carriers, including the jurisdiction of the department of insurance over unfair claim settlement practices as provided in § 20–461.

such as this. They argue that § 23–930 merely establishes an administrative system to resolve such complaints, leaving intact judicial jurisdiction to hear common-law bad faith actions.

■ If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation. *State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). Ambiguity exists if there is uncertainty about the meaning or interpretation of a statute's terms. *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985). Plaintiff argues that there is more than one reasonable interpretation of the statute's grant of "exclusive" jurisdiction to the Industrial Commission ("the Commission").

Although the trial and appellate courts assumed that the statute preempts and divests all state courts of jurisdiction over workers' compensation bad faith cases, Plaintiff correctly notes that the statute does not explicitly say this. In fact, it does not mention either common-law damage actions or divestiture of court jurisdiction. Instead, the statute states only that "[t]he commission has exclusive jurisdiction *as prescribed in this section* over *complaints* involving alleged unfair claim processing practices or bad faith" by compensation carriers. A.R.S. § 23–930(A) (emphasis added).

This sentence has at least two plausible interpretations. First, the legislature might have meant to deprive the judiciary of all power to hear damage actions sounding in bad faith, transferring exclusive jurisdiction over such common-law claims to an administrative forum: the Commission. Second, the legislature might have meant to give the Commission exclusive jurisdiction *only* over the administrative complaints and penalties authorized and created by the statute, leaving intact the courts' jurisdiction over common-law damage actions.

The fact that the statute grants the Commission jurisdiction over something *other* than common-law bad faith actions bolsters the second interpretation. The statute directs the Commission to adopt a definition of unfair claim processing practices and bad faith based, among other factors, on "recognized and approved claim processing practices within the insurance industry...." However, Arizona courts have long recognized that the scope of an insurer's duty of good faith "cannot be delineated by customs of the insurance industry." *Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 539, 647 P.2d 1127, 1137, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); *see also Rawlings v. Apodaca,* 151 Ariz. 149, 158, 726 P.2d 565, 574 (1986) (compliance with industry custom is not an absolute defense to a bad faith claim). Thus, by saying that the Commission has "exclusive jurisdiction as prescribed in this section," the statute seems to grant the Commission jurisdiction only over those administrative complaints meeting this special statutory definition, which differs from that of the common law. Such an interpretation, of course, would not affect the courts' jurisdiction over common-law actions. This interpretation is further supported by the scant remedy provided for victims of bad faith practices.[4]

## B. Interpretation of ambiguous statutes

■ The foregoing analysis demonstrates that the statute's text allows for more than one rational interpretation. In such cases courts may resolve doubt by resorting to statutory interpretation. *Sweet,* 143 Ariz. at 269, 693 P.2d at 924 (1985). If possible, of course, we try to determine and give effect to the legislature's intent. *See, e.g., Devenir Assoc. v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991); *Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). In pursuing this goal, we consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose. *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991); *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990); *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988); *see also Estate of Hernandez v. Arizona Board of Regents,* 177 Ariz. 244, 866 P.2d 1330 (1994) (examining statute's history, effects, wording, and the

---

4. *See post,* note 14.

context of the overall legislative scheme). We begin our analysis by examining the statute's history.

## C. The statute's history

The timing of this statute's adoption tells little about the legislature's intent. The legislation that became § 23–930 was first introduced in February 1987, over a year after the *Franks* opinion was filed and several months before *Boy.* Thus, there is no clear indication from its timing that the legislature adopted the statute in response to either of these opinions.

■ We next examine the statute's journey through the legislature. Divining Congress' intent by examining legislative history has been derided by Justice Scalia as "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff,* —— U.S. ——, ——, 113 S.Ct. 1562, 1567, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring). Nevertheless, when a statute's meaning is disputed, we believe it is important, though not always dispositive, to review the statute's legislative history to find, if possible, any shared legislative understanding of the relevant language. *Cf. Carrow Co. v. Lusby,* 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990) ("Legislative intent can often be discovered by examining the development of a particular statute.").

■ In this case, however, the history of § 23–930 discloses few recognizable faces, friendly or otherwise, in the legislative crowd. This statute was first introduced as House Bill 2281 on February 4, 1987 but was not enacted until the third special session in July of that year. We have found nothing in the records of the third special session[5] that indicates any intent, express or implied, to overrule *Boy* or *Franks.* The records do not mention or even allude to these cases. Nor is there any discussion of the meaning of the exclusive jurisdiction granted to the Commission, although an amendment striking the word "exclusive" was defeated on a tie vote in the House Commerce Committee.[6] Moreover, the governor's address to the legislature merely refers to the bill as establishing "a system to resolve complaints involving unfair claim processing practices."[7]

We have also examined the records of the first regular session of 1987, in which this bill was first introduced but not passed. We find them similarly cryptic. The only discussion that related directly to the statute's jurisdictional language was by two private attorneys who addressed a legislative committee. One attorney, who opposed the bill, argued that it would overrule *Franks* and divest courts of jurisdiction.[8] The other, who favored the bill, said it would prevent complaints from being filed with *both* the Commission *and* the courts.[9] These comments, it must be noted, were made at a session in which the bill failed to pass.

■ When seeking to ascertain the intent of legislators, courts normally give little or no weight to comments made at committee hearings by nonlegislators. Norman J. Singer, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 48.10 (5th ed. 1992) (hereinafter "SUTHERLAND"); *see also Kelly v. Robinson,* 479 U.S. 36, 51 n. 13, 107 S.Ct. 353, 362 n. 13, 93 L.Ed.2d 216 (1986) (nonlegislators' testimony in congressional hearings ac-

---

5. The records to which we refer were neither introduced at trial nor in the court of appeals. We note that one Arizona case has held that an appellate court may not consider the minutes of a legislative committee hearing unless those minutes were properly introduced at trial. *O'Malley Lumber Co. v. Riley,* 126 Ariz. 167, 169, 613 P.2d 629, 631 (Ct.App.1980). We disagree. Such records are an appropriate subject for judicial notice. *Cf. Giragi v. Moore,* 48 Ariz. 33, 42, 58 P.2d 1249, 1252 (1936) (appellate court may take judicial notice of legislative journals that constitution requires to be kept); *see also Blue Hills Cemetery v. Board of Registration,* 379 Mass. 368, 398 N.E.2d 471, 476 n. 10 (1979) (appellate court

may take judicial notice of legislative history not introduced in trial court).

6. Minutes of the House Commerce Committee, 38th Leg., 3d Spec.Sess. 5 (July 20, 1987).

7. Journal of the House, 38th Leg., 3d Spec.Sess. 3 (July 20, 1987).

8. *See* Minutes of the House Commerce Committee, 38th Leg., 1st Sess., att. 18 (Feb. 16, 1987).

9. *See* Minutes of the House Commerce Committee, 38th Leg., 1st Sess., att. 18 (Feb. 16, 1987).

corded no significance); *Savings & Loan League of Connecticut v. Connecticut Hous. Fin. Auth.*, 184 Conn. 311, 439 A.2d 978, 980 n. 1 (1981) (statements at public hearings by nonlegislators are inadmissible and may not be considered for purposes of statutory interpretation); *Henthorn v. Grand Prairie Sch. Dist.*, 287 Or. 683, 601 P.2d 1243, 1247 n. 5 (1979) (statements before legislative committees by persons not members of the legislature may have little or no significance). *Cf. Estate of Hernandez*, 177 Ariz. at 250–51, 866 P.2d at 1336–37, in which nonlegislators' comments were cited to show only that a particular subject was *not* under consideration. In contrast, a nonlegislator's comments about a statute's effect are far less useful for indicating what the legislature *intended* because the legislators may have disagreed with the speaker's analysis.[10]

We believe the best policy is not to consider nonlegislators' statements to determine the legislature's intent concerning the specific application of a proposed statute, unless the circumstances provide sufficient guarantees that the statements reflect legislators' views. *See* Allison C. Giles, Comment, *The Value of Nonlegislators' Contributions to Legislative Committee*, 79 GEO.L.J. 359 (1990); Note, *Nonlegislative Intent as an Aid to Statutory Interpretation*, 49 COLUM.L.REV. 676 (1949). We find no such guarantees in the present case.

In summary, we find nothing expressing any legislator's intent, let alone any general legislative consensus on this provision's meaning. Moreover, the absence of explicit preemptive language may indicate an intent not to preempt, especially when the legislature is well aware of the words of art that should be used to accomplish such a result. *See Goulder v. Arizona Dept. of Transp.*, 177 Ariz. 414, 416–417, 868 P.2d 997, 999–1000 (Ct.App.1993). Thus, this statute's legislative history provides no dispositive interpretation of the language in question.

**D. Legislative goals inferred from the body of law and the statute's consequences**

When we cannot ascertain the legislature's intent on a specific issue, this court tries to interpret statutes in a manner that furthers perceived goals of the relevant body of legislation. *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 254, 782 P.2d 727, 730 (1989). Here again, however, scant information is available. There is no statement of purpose in the statute itself, nor was it enacted as part of a comprehensive body of legislation addressing one general problem. Instead, § 23–930 was simply inserted in art. 2 of the Workers' Compensation Chapter. This article is regulatory in character and deals only with "Administration and Enforcement." This stands in marked contrast to cases such as *Estate of Hernandez*, 177 Ariz. at 251–52, 866 P.2d at 1337–38, in which the legislative goals of regulating common-law dram shop and social host actions were clarified by examining the provisions of the overall body of law.

As noted above, the governor, in proclaiming the special session in which § 23–930 was adopted, said only that one of the session's purposes was to establish a system to resolve complaints. The closest thing we have found to a legislator's expression of intent was the Commerce Committee chairman's statement that "something needs to be done about the bad faith practices by the insurance companies." [11] Neither this nor any of the other sparse evidence available discloses any general or specific legislative goal to be served by preempting judicial jurisdiction over common-law bad faith claims against compensation carriers.

Defendant also argues that we should look to the statute's effects and consequences to illuminate legislative intent. Defendant claims that finding concurrent jurisdiction would be unwise because it would

10. There are, of course, other problems with determining a legislative body's motivation. *See generally Church of the Lukumi Babalu Aye v. City of Hialeah*, — U.S. —, —, 113 S.Ct. 2217, 2239–40, 124 L.Ed.2d 472 (1993) (Scalia, J. concurring in part); *Edwards v. Aguillard*, 482 U.S. 578, 636–39, 107 S.Ct. 2573, 2605–07, 96 L.Ed.2d 510 (1987) (Scalia, J. dissenting).

11. Minutes of the House Commerce Committee, 38th Leg., 3d Spec.Sess. 6 (July 20, 1987). This statement, however, provides no clear guidance.

allow divergent results between the administrative and judicial remedies. Yet the record reveals no legislative consideration of this issue. Concurrent remedies in the judicial and administrative fora often coexist successfully. For example, doctors and lawyers are subject to administrative discipline[12] as well as to malpractice tort actions. Securities brokers and commodities traders may also face both regulatory penalties and common-law actions by aggrieved investors. *See* A.R.S. §§ 44–2001 to 44–2005; 44–2036; 44–2037; *see also Kotz v. Bache Halsey Stuart, Inc.*, 685 F.2d 1204, 1207–08 (9th Cir.1982). Thus the potential for divergent results does not render administrative remedies and common-law actions mutually exclusive.

Moreover, numerous courts in other states with statutory bad faith penalties have considered whether such provisions necessarily preempt a worker's right to bring a tort action. Although the opinions are divided, many courts have concluded that independent tort actions are viable even where some form of statutory penalty provision exists. *See, e.g., Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1271 (Colo.1985) (statutory penalty and interest provisions do not bar common-law bad faith action); *Boylan v. American Motorists Ins. Co.*, 489 N.W.2d 742 (Iowa 1992) (same).[13] Although the rationales for these decisions vary, they show that a statutory penalty scheme can coexist with a common-law cause of action for bad faith and similar intentional torts in the workers' compensation setting.

We also note that the penalties imposed by § 23–930 are relatively modest.[14] Although the penalty amount is not determinative in itself, we certainly cannot say the penalties are so flexible, and the administrative remedies so comprehensive, that the legislature must have intended for them to provide the sole remedy for, or deterrent to, the serious abuses that the common law addresses. *Cf. Thunder Basin Coal Co. v. Reich*, —— U.S. ——, ——, 114 S.Ct. 771, 780–81, 127 L.Ed.2d 29 (1994) (statutory scheme so comprehensive that it, along with statute's history, demonstrated legislative intent to preclude district court review of administrative orders); *CETA Workers' Org. Comm. v. City of New York*, 617 F.2d 926, 930–31 (2d Cir.

12. *See* A.R.S. §§ 32–1451 to 32–1456 (medical discipline); Ariz.R.Sup.Ct. 42, 51–60 (legal discipline).

13. *See also Carpentino v. Transport Ins. Co.*, 609 F.Supp. 556, 562 (D.Conn.1985); *Lowman v. Piedmont Executive Shirt Mfg. Co.*, 547 So.2d 90, 94 (Ala.1989); *Stafford v. Westchester Fire Ins. Co.*, 526 P.2d 37, 42–44 (Alaska 1974), *overruled on other grounds*, 556 P.2d 525 (1976); *Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220, 223 (Maine 1978); *Gallagher v. Bituminous Fire & Marine Ins. Co.*, 303 Md. 201, 492 A.2d 1280, 1283–84 (1985); *Kaluza v. Home Ins. Co.*, 403 N.W.2d 230, 236 (Minn.1987); *Southern Farm Bureau Cas. Ins. Co. v. Holland*, 469 So.2d 55, 58 (Miss.1984); *Hayes v. Aetna Fire Underwriters*, 187 Mont. 148, 609 P.2d 257, 262 (1980); *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 215 (Tex.1988). *But see Whitten v. American Mut. Liab. Ins. Co.*, 468 F.Supp. 470, 474–75 (D.S.C.1977), *aff'd*, 594 F.2d 860 (4th Cir.1979); *Soto v. Royal Globe Ins. Corp.*, 184 Cal.App.3d 420, 229 Cal.Rptr. 192, 197 (1986); *Old Republic Ins. Co. v. Whitworth*, 442 So.2d 1078, 1083 (Fla.Dist.Ct.App.1983); *Bright v. Nimmo*, 253 Ga. 378, 320 S.E.2d 365, 368 (1984); *Robertson v. Travelers Ins. Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 959, 448 N.E.2d 866, 871 (1983); *Bergeron v. North Am. Underwriters, Inc.*, 549 So.2d 315, 315 (La.1989).

14. A.R.S. § 23–930(B) authorizes a penalty, payable to the claimant, of 25% of the amount wrongfully withheld or $500, whichever is greater. In addition, under section (C), if the Commission finds a pattern of abuse, it may impose a civil penalty of up to $1,000 for each violation, payable to a special fund rather than to the claimant. This penalty structure seems to discourage claimants from bringing bad faith claims if the amount in controversy is small because there is little chance of recovering enough money to pay an attorney. It is an equally weak deterrent to bad faith practices in larger cases because a 25% penalty can easily be absorbed by an insurer who selectively targets abusive practices to those cases likely to succeed. Moreover, even if an insurer faces the added penalty for a pattern of abuse, the penalty is only $1,000, regardless of the amount the insurer wrongfully withholds. Thus, in cases in which a $1,000 fine is small compared to the amount the insurer would stand to gain, the fixed fine provides little deterrent to unfair practices if the insurer selects only those cases in which the practices are most likely to succeed in preventing workers from pressing genuine claims. It is therefore questionable whether these penalties are adequate to discourage bad faith practices. This, of course, is not to say that the legislature could not have meant a relatively weak set of remedies to be the sole remedy for bad faith practices, but it more logically indicates the opposite intent.

**272**

1980) (the statutes comprising the Comprehensive Employment and Training Act cannot be construed to authorize a private right of action for breach because the "totality of these provisions, comprehensive and well-crafted to the Act's administrative, institutional, and political exigencies, affirms the primacy and suggests the exclusivity of the [administrative] procedures...."). *See also Carpentino v. Transport Ins. Co.,* 609 F.Supp. 556, 561 (D.Conn.1985) (relatively low penalties are an important factor in determining whether to allow common-law tort actions); *Southern Farm Bureau Cas. Ins. Co. v. Holland,* 469 So.2d 55, 58 (Miss.1985) (penalty provisions for workers' compensation bad faith inadequate to deter intentional carrier wrongdoing).

▉ In the final analysis, then, we find two possible conclusions. One is that the legislature enacted § 23–930 merely to establish an administrative forum as an alternative to or supplement for the more complicated and expensive legal system. Such a forum would provide relief for claimants who have been mistreated but not seriously injured, and would also provide some deterrence against unfair claim processing practices. The other possible conclusion is that the legislature, dissatisfied with the common-law remedy for reasons described by neither the legislators, employers, employees, nor carriers, wanted to abolish it and substitute an exclusively administrative remedy. Faced with these alternatives, we might speculate as to which is more probable and reach a determination on that basis. However, in dealing with the existence or abrogation of vital common-law rights and judicial jurisdiction, we believe it unwise to find preemption based on speculation about legislative intent, or even on probability theory. Sound jurisprudential policy points to a different path.

### E. Jurisprudential considerations

We deal, in this and similar cases, with recognition, denial, preemption, and abrogation of common-law damage actions. Unlike most state constitutions, the Arizona Constitution specifically protects many of these rights from legislative or executive abrogation. *Hazine,* 176 Ariz. at 342, 861 P.2d at 627; *Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 730 P.2d 186 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 527 (1987). The right to pursue common-law damage remedies is protected by constitutional text,[15] has origins in the foundation and history of our state, and has been jealously protected by this court's jurisprudence from the first days of statehood. *See, e.g., Consolidated Arizona Smelting Co. v. Ujack,* 15 Ariz. 382, 139 P. 465 (1914); *Alabam's Freight Co. v. Hunt,* 29 Ariz. 419, 242 P. 658 (1926); *State ex rel. Industrial Comm'n v. Pressley,* 74 Ariz. 412, 250 P.2d 992 (1952); *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984); *Boswell,* 152 Ariz. 9, 730 P.2d 186; *Hazine,* 176 Ariz. 340, 861 P.2d 625.[16] Even a more restrictive analysis applies the guarantees of art 18, § 6 to industrial injury cases. *See* Roger C. Henderson, *Tort Reform, Separation of Powers, and the Arizona Constitutional Convention of 1910,* 35 ARIZ. L.REV. 535 (1993).

▉ Thus, even in situations in which the legislature can constitutionally abrogate, preempt, or deny common-law rights,[17] given the importance of those concepts in Arizona history and jurisprudence, we are reluctant to interpret a statute in favor of denial or preemption of tort claims—even those that are not or may not be constitutionally protected—if there is any reasonable doubt about the legislature's intent. Even if the cause of action is not protected by the constitution in this area of the law, therefore, several factors must be considered, including:

First, if possible this court construes statutes to avoid rendering them unconstitutional. *Slayton v. Shumway,* 166 Ariz. 87, 92, 800 P.2d 590, 595 (1990); *Arizona Downs v. Arizona Horsemen's Found.,* 130 Ariz. 550,

---

**15.** *See* Ariz. Const. art. 2, § 31 and art. 18, § 6.

**16.** *See also* THE RECORDS OF THE ARIZONA CONSTITUTIONAL CONVENTION OF 1910 152, 548 (John S. Goff, ed. 1991) (discussing application of the constitutional anti-abrogation provisions to both employment-related and other types of injuries); John D. Leshy, THE ARIZONA STATE CONSTITUTION 310–13 (1993) (discussing the history of art. 18, § 6).

**17.** *See ante,* note 1.

554, 637 P.2d 1053, 1057 (1981); *Phoenix Newspapers, Inc. v. Superior Court,* 1993 WL 537923, 155 Ariz.Adv.Rep. 11 (Ct.App. 1993).

Second, if possible we construe statutes to avoid unnecessary resolution of constitutional issues. *See Petolicchio,* 177 Ariz. at 259, 866 P.2d at 1345; *Dunn,* 177 Ariz. at 196, 866 P.2d at 864; *State v. Yslas,* 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984).

Third, courts endeavor to avoid overbroad statutory interpretations that afford unintended immunity in derogation of common-law rights of action. *Wringer v. United States,* 790 F.Supp. 210, 213 (D.Ariz.1992), *aff'd,* 10 F.3d 809 (9th Cir.1993); *In re Estate of Thelen,* 9 Ariz.App. 157, 160–61, 450 P.2d 123, 126–27 (1969).

Fourth, because the superior courts are courts of general jurisdiction, we construe statutes in favor of retaining jurisdiction and will not find divestiture unless stated clearly, explicitly, and unambiguously. *Pritchard v. State,* 163 Ariz. 427, 430, 788 P.2d 1178, 1181 (1990); *Daou v. Harris,* 139 Ariz. 353, 356, 678 P.2d 934, 937 (1984). Thus, this court has generally declined to find preemption of a cause of action in the absence of a very clear statement of legislative intent or, better yet, a clear statement in the statute's text. *Cf. Carrow,* 167 Ariz. at 21, 804 P.2d at 750 (absent manifest legislative intent to the contrary, statutes are to be construed as consistent with the common law); *See also* SUTHERLAND § 61.01, at 172 (courts presume that legislature does not intend to abrogate common-law rights of action).

Finally, and most important, the foregoing general rules and the basic jurisprudential policy described in this section militate in favor of a general and fixed rule to be applied when we are asked to construe a statute in such a way as to deny common-law actions. If the legislature seeks to preempt a cause of action or to deprive the courts of jurisdiction, the law's text or at least the legislative record should say so explicitly. This court will then know the legislature's intent and will not have to look for the friendly face or use the divining rod of judicial speculation to find it.

Such a rule—refusing to construe ambiguous statutes to deny common-law rights— saves us from having to ascertain what is often unknowable. It also forces the debate over the propriety of denial, preemption, and abrogation of our citizens' rights to be held at the place where such disputes should be settled: at the legislature. There citizens can be heard, interest groups can lobby, and legislators can debate these factors as a condition of the statute's passage or defeat. The purpose and effect of the statute will then be apparent to the public *and* to the legislators *before* the law is passed. In contrast, in this court we can only speculate after the bill has been passed, with nothing to rely on except legislative records often as sparse as those in the present case, in which the only specific mention of the effects of the statute was made by nonlegislators during a hearing in a legislative session in which the bill was not passed.

A useful analogy can be drawn to cases discussing whether a private common-law action may be based on a regulatory statute. *See, e.g., Melancon v. USAA Cas. Ins. Co.,* 174 Ariz. 344, 348, 849 P.2d 1374, 1378 (Ct.App.1992). Various standards have been applied to determine whether a given statute creates an implied private right of action. *Compare Sparks,* 132 Ariz. at 541, 647 P.2d at 1139 (relying on statutory provisions stating that regulatory enforcement does not preclude other liability), *with City of Tucson v. Superior Court,* 127 Ariz. 205, 208, 619 P.2d 33, 36 (Ct.App.1980) (applying a four-prong test to determine whether a private right of action should be inferred, relying on *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)). We think, however, that there is merit in a simpler rule of construction: we will not interpret a law to deny, preempt, or abrogate common-law damage actions unless the statute's text or history shows an explicit legislative intent to reach so severe a result. It is, after all, easy enough for the legislature to state that a certain statute does or does not create, preempt, or abrogate a private right of action. The appropriate language is known to

the legislature.[18] Under such a rule, then, members of the public would know a statute's effect in advance and could advocate their views to the legislature at a time when they would affect those whose actions are constitutionally intended to be controlled by the democratic process.

In the same way, it is in the overall best interest of our entire state government if its judicial branch is not continually put in the position of rendering *post hoc* constructions of unclear statutes that may affect constitutionally protected rights. Finally, if legislators know in advance that ambiguous language will lead to this outcome, they can act accordingly. We therefore reaffirm the principle that ambiguous statutes will be construed as not forbidding or preempting judicial jurisdiction or common-law actions. *See Pritchard*, 163 Ariz. 427, 788 P.2d 1178; *Daou*, 139 Ariz. 353, 678 P.2d 934; *see also* SUTHERLAND § 61.01, at 172. If the legislature intends to deny, abrogate, or preempt, it must clearly say so.

We realize, of course, that unbending application of this policy might sometimes frustrate genuine legislative intent. However, judicial speculation about such intent is undoubtedly incorrect at times, and when it is, it too frustrates the legislature's intent. Furthermore, any tendency to frustrate true legislative intent on these issues will be minimal because this policy encourages legislators to avoid leaving something as important as the existence or nonexistence of common-law rights to inference or implication.

> [T]he risk that [a fixed policy of construction resulting in a uniform result in the absence of specific legislative statement] would occasionally frustrate genuine legislative intent would decrease from its cur-

rent level of minimal to virtually zero. It would then be true that the opportunity for frustration of intent "would be a virtual dead letter[,] ... limited to drafting errors when [the legislature] simply forgot to codify its intention...."

*Thompson v. Thompson*, 484 U.S. 174, 192, 108 S.Ct. 513, 523, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring) (discussing the implied creation of a private right of action). This regime is surely preferable to the destruction of important rights or remedies by judicial conclusions about legislative intent based on nothing stronger than ambiguous language and inadequate legislative records or history.

## RESOLUTION

Applying the foregoing principles and considerations, we hold that A.R.S. § 23–930 does not divest Arizona courts of jurisdiction over the common-law causes of action recognized in *Boy* and *Franks*.[19] This holding gives sensible meaning to the phrase in § 23–930(A) "as prescribed in this section." *See Tittle v. State*, 169 Ariz. 8, 9, 816 P.2d 267, 268 (Ct.App.1991) (courts must give meaning to each statutory clause if possible). We conclude that this phrase means that the administrative complaints over which the Commission has exclusive jurisdiction are those lodged with it under the regulations that the statute directs it to adopt. *See* A.R.S. § 23–930(E); Ariz.Admin.Code R4–13–163 (1989). Jurisdiction is exclusive in the administrative agency because the statute is not to be enforced by any entity other than the Commission. The Commission's definition of bad faith, as noted above, is not applicable in actions filed in the courts. The

---

18. For example, A.R.S. § 20–461 prohibits certain practices in handling insurance claims. The legislature expressed its intent that no private action may be based on a violation of that statute as follows:

> Nothing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state. It is, however, the specific intent of this section to provide solely an administrative remedy to the director for any violation of this section or rule related thereto.

A.R.S. § 20–461(D); *see also Melancon*, 174 Ariz. 344, 849 P.2d 1374. The quoted language deals, of course, with the existence or nonexistence of a right of action that has not yet been recognized by the common law. Where the constitution permits preemption, similar language could obviously be employed to preempt jurisdiction of an existing right of action, such as the bad faith action at issue in the present case.

19. We therefore do not reach the question of whether a bad faith action against a workers' compensation carrier is protected by our constitution.

remedies and penalties that the statute provides are available solely through the Commission.[20]

This construction also accounts for the legislature's reference to unfair claim practices and complaints rather than to actions for damages. The statute confers jurisdiction over complaints about the practices defined by the Industrial Commission but not over actions pursuant to the common law. Finally, this construction avoids any need to decide this statute's constitutionality under Ariz. Const. art. 18, §§ 6 or 8.[21]

Furthermore, the interpretation we adopt today rejects preemption of judicial jurisdiction and of common-law actions by finding the judicial remedy to be compatible with the administrative remedy. We choose this interpretation because neither the statute's text nor the legislative record provides any clear statement of the legislature's intent to preempt judicial jurisdiction or divest our citizens of common-law causes of action. Our interpretation therefore fosters the basic policy of preserving common-law remedies.

## CONCLUSION

We hold that A.R.S. § 23–930 does not divest Arizona's courts of jurisdiction over workers' compensation bad faith actions but instead establishes an administrative remedy complementing the common-law action afforded by our courts and recognized in *Franks*. Accordingly, we reverse the trial court's judgment of dismissal, vacate the court of appeals' opinion, and remand this case to the trial court for further proceedings consistent with this opinion.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

---

**20.** This reading also harmonizes with the statute's section (F), which states that the statute is not intended to interfere with the Insurance Department's authority over unfair claim settlement practices. Our construction leaves intact the authority of both the Insurance Department and the courts, and is thus compatible with the command of section (F).

**21.** *See ante,* note 1.