967 P.2d 1026

**PHXAZ LIMITED PARTNERSHIP, a Texas limited partnership, and CN Residential Limited Partnership, Plaintiffs–Appellees,**

v.

**MARICOPA COUNTY, Defendant–Appellant.**

**Nos. 1 CA–TX 98–0001, 1 CA–CV 98–0119.**

Court of Appeals of Arizona, Division 1, Department T.

Sept. 24, 1998.

---

**6.** The court filed the envelope containing the    notice to Plaintiff as undeliverable in the record.

492

Fennemore Craig, P.C. by Paul J. Mooney, Kendis K. Muscheid, Phoenix, for Plaintiff–Appellee PhxAz Limited Partnership.

Nearhood Law Offices, PLC by Richard D. Nearhood, James R. Nearhood, Howard J. Weiss, Scottsdale, for Plaintiff–Appellee CN Residential Limited Partnership.

Helm & Kyle, Ltd. by John D. Helm, Roberta S. Livesay, Michelle M. Tran, Tempe, for Defendant–Appellant.

## OPINION

RYAN, Judge.

¶ 1 These consolidated appeals require us to examine the scope of the special method that Arizona Revised Statutes Annotated ("A.R.S.") section 42–146 prescribes for valuing "golf courses" for property tax purposes. Specifically, we must decide whether this special valuation method applies when the owner has recorded an instrument restricting the property to use as a golf course but, as of the valuation date, construction of golf course improvements has barely begun and golf cannot be practiced or played on the property. We hold that the special valuation method of A.R.S. section 42–146 does not apply in these two cases. Therefore, we reverse and remand.

## FACTS AND PROCEDURE

¶ 2 The parties agree upon the dispositive facts.

### PHXAZ LIMITED PARTNERSHIP

¶ 3 PhxAz Limited Partnership was the owner of a 713 acre parcel of real property in Phoenix. PhxAz undertook to develop the property as a master-planned community comprising single-family houses, apartments, a golf course, a resort, and retail and commercial office space. In 1991, the City of Phoenix certified PhxAz's property as a planned community development district called Desert Springs.

¶ 4 The City's master plan for the area set aside 213 acres for development as the Kierland Golf Course. The City approved the zoning of the subparcel for that purpose. PhxAz contracted for a golf course architectural design. The initial design plans were completed in December 1994.

¶ 5 That same month, PhxAz entered into contracts for constructing golf course improvements. PhxAz recorded a "Declaration of Restriction for Golf Course Use" pertaining to the planned course on December 21, 1994. On December 30, 1994, the City of Phoenix issued grading permits. The 18-hole Kierland Golf Course was completed by the end of 1995.

¶ 6 For tax year 1995, the Maricopa County Assessor took the position that as of the valuation date of January 1, 1995, the 213-acre golf course parcel did not constitute a "golf course" for the purposes of A.R.S. section 42–146(G). The assessor declined to value the property according to the method prescribed by A.R.S. section 42–146(A). PhxAz administratively appealed. The State Board of Equalization agreed with the County and set a full cash value of $13.2 million.

¶ 7 PhxAz challenged this ruling by appealing to the Tax Court in Superior Court. On cross-motions for summary judgment the tax court held for PhxAz, finding that "once the deed restriction is recorded, the property under construction is entitled to golf course valuation under 42–146." The final judgment valued the 213-acre parcel at $106,995 without apportioning the amount between the land and the golf improvements.

¶ 8 The County appealed and this court docketed the County's appeal as case no. 1 CA–TX 98–0001.

### CN RESIDENTIAL LIMITED PARTNERSHIP

¶ 9 The facts in appellee CN Residential Limited Partnership's ("CN") case are similar to those in PhxAz's case. In mid–1992, the City of Scottsdale approved golf course zoning for a parcel of state land within its

boundaries. In early 1993, CN bought a larger piece of land from the State Land Department containing that parcel.

¶ 10 CN engaged an architect to prepare golf course plans. The architect completed the initial plans in 1994. On December 15, 1994, CN entered into contracts for constructing golf course improvements. On December 30, 1994, CN recorded a "Declaration of Restriction for Golf Course Use."

¶ 11 For tax year 1995, the Maricopa County Assessor declined to value the restricted parcel as a golf course under A.R.S. section 42–146. The assessor set a full cash value of approximately $4.4 million.

¶ 12 CN appealed to the Superior Court, Maricopa County. The parties filed cross-motions for summary judgment. In addition to asserting that A.R.S. section 42–146 did not apply, the County's cross-motion contended that if the trial court applied section 42–146 to CN's property, it would also have to determine a value for the improvements on that land.

¶ 13 The motions were heard by the same trial judge who had considered and ruled on the cross-motions for summary judgment in PhxAz Limited Partnership's appeal. The trial judge followed his earlier reasoning in that case and granted summary judgment for CN. He explained in part:

> The County ... says the statute requires a completed golf course before its largesse applies. But I do not see that in the statute. The County extrapolates that from the statutory definition of "golf course" as "substantially undeveloped land including amenities such as ... golf greens and tees ... which may be used for golfing or golfing practice...." They point to that definition and say see that's what this entire statute is talking about. But it seems to me that that definition can be read in two different ways: highly favorable tax treatment may be given to (1) undeveloped land that *may in the future* be used for golfing, or (2) to land that has in place amenities, such as golf greens and tees, and *right now may be used* for golfing. I think the first definition is the most reasonable. (Emphasis in the original).

¶ 14 The County appealed from formal judgment for CN, and this court docketed the appeal as case no. 1 CA–CV 98–0119. Following an unopposed joint motion by CN and PhxAz, we consolidated this case with case no. 1 CA–TX 98–0001. We have jurisdiction. A.R.S. § 12–2101(B).

**DISCUSSION**

¶ 15 The County contends the courts below erred in holding that as of January 1, 1995, the taxpayers' properties constituted "golf courses" within the meaning of A.R.S. section 42–146 and should not have been valued as such. It contends the legislature intended for the statutory golf course valuation method to apply only to completed, "playable" golf courses. The County urges that the courts below misinterpreted a crucial portion of the statutory definition of "golf course" in section 42–146(G), and mistakenly concluded that recording a deed restriction under section 42–146(E) was the sole statutory prerequisite to valuation as a "golf course."

¶ 16 The County also argues that the trial courts violated the requirement of A.R.S. section 42–141(A)(5) that "current usage" be "included in the formula for reaching a determination of full cash value." Finally, the County contends that the valuation procedures under A.R.S. section 42–146(A), which center on an intricate protocol for valuing in-use golf course improvements based on applying economic obsolescence to the Department of Revenue's ("DOR") 1988 per-hole costs, could not have been intended to apply to golf courses that were still under construction.

¶ 17 The taxpayers contend the courts below correctly held that their properties were entitled to valuation under A.R.S. section 42–146 for tax year 1995. The taxpayers urge that recording a golf course deed restriction is sufficient to create a "golf course" under A.R.S. section 42–146 because doing so restricts the use of the property from the moment it becomes effective—regardless of whether golf course improvements have been constructed. The taxpayers further contend that the deed restrictions in this case established their properties as golf courses be-

cause prior zoning approvals and the threat of penalties under A.R.S. section 42–146(E) would have effectively prevented the taxpayers from attempting to use their properties for another purpose.

■ ¶ 18   Our task here is not to make an initial public policy choice concerning how to value property on which a golf course is under construction; it is rather to interpret and apply a statute. We presume that in formulating the statute the legislature has already considered and resolved the policy question. Our goal in interpreting A.R.S. section 42–146 is to identify and effectuate the legislature's intent. *See Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (court's goal is to fulfill intent of legislature that wrote statute); *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (in determining and giving effect to legislature's intent, court considers statute's context, language, subject matter and historical background, its effects and consequences, and its spirit and purpose). A statute's language is the best and most reliable index of the legislature's intent. *See Zamora,* 185 Ariz. at 275, 915 P.2d at 1230.

■ ¶ 19   By the plain terms of A.R.S. section 42–146(A), property that a taxpayer wishes to have valued under the method the statute provides must constitute a "golf course" within section 42–146(G). "Golf course" is specifically defined in A.R.S. section 42–146(G):

> G.   As used in this section, "golf course" means substantially undeveloped land, including amenities such as landscaping, irrigation systems, paths and golf greens and tees, which may be used for golfing or golfing practice by the public or by members and guests of a private club but not including commercial golf practice ranges operated exclusive of golf courses valued under this section, clubhouses, pro shops, restaurants or similar buildings associated

with the golf course which are generally used by the public or by members and guests entitled to use the golf course.

■ ¶ 20   Neither taxpayer's property was a "golf course" within section 42–146(G)'s terms on January 1, 1995. The essence of a "golf course" under subsection G is that it be "substantially undeveloped land ... [that] **may be used for golfing or golfing practice** by the public or by members and guests of a private club...." (Emphasis added). Webster's Third New International Dictionary (Unabridged) 1396 (1971), defines "may" in relevant part as "have permission to," "liberty to," or "likely to." *See also* Black's Law Dictionary 979 (6th ed.1990) (defining may as "[a]n auxiliary verb qualifying the meaning of another verb by expressing ability, competency, liberty, permission, possibility, probability or contingency").

¶ 21   There is no dispute that both taxpayers' properties were "substantially undeveloped land" on January 1, 1995. But it is also undisputed that no one could have had "permission" or "liberty" to use either property "for golfing or golfing practice...." At that time neither property was capable of being used as a golf course.[1]

¶ 22   We cannot agree with the trial court that the legislature used "may" in section 42–146(G) in the sense of "be in some degree likely to." It is difficult to conceive that the legislature would have made the applicability of a special valuation method with such significant consequences as that provided in section 42–146(A) turn on an unspecified degree of probability that a parcel of property would be committed to use for golfing or golfing practice at an unspecified point in the future. Indeed, neither taxpayer argues for that interpretation of subsection G on appeal.

¶ 23   Instead, the taxpayers argue that section 42–146(E) provides that recording a golf course deed restriction is sufficient to create a "golf course" under A.R.S. section 42–146. The taxpayers maintain that record-

---

1.   Taxpayer PhxAz points out that nothing in section 42–146(G) provides that the amenities listed in the definition must be in place before the property may be considered a "golf course." While this is true, subsection G nevertheless clearly states that only property that "may be

used for golfing or golfing practice" is a "golf course" within section 42–146. Only a completed golf course, presumably featuring some of the specific improvements listed in subsection G, fulfills that necessary criterion.

ing such a deed prevents alternative uses of the land, regardless whether the golf course can be used, thus entitling them to valuation under section 42–146(A). In support of their argument, the taxpayers observe that even as of January 1, 1995, undoing the City of Phoenix's planned community development process to enable non-golf course uses of their properties would have been a formidable, expensive, and doubtful task. They also point out that if they had later used their properties as other than golf courses, they would have had to pay statutory penalties in the form of property tax differentials possibly reaching back as far as ten years.

¶ 24 A.R.S. section 42–146(A) makes application of the special golf course valuation method "[s]ubject to subsection E of this section...." Subsection E provides in relevant part:

> E. *As a condition for valuation under this section, the owner shall record a deed restriction with the county recorder and file a copy of the restriction with the county assessor, restricting the property to use as a golf course for at least ten years.* The deed restriction must be refiled as necessary to ensure that the deed restriction always applies for at least ten years. The valuation of a golf course under this section constitutes a covenant between the county assessor and the owner of the golf course that the use of the property will remain unchanged for the duration of the deed restriction. If the property is converted to a different use in violation of the covenant, there shall be added to the tax levied against the property on the next tax roll a penalty equal to the difference between the total amount of property taxes that would have been levied on the property for the preceding ten years or the period of time the property was assessed under this section, whichever period is less, had the property not been assessed under this section and the property taxes paid for the same period. (Emphasis added).

¶ 25 The taxpayers' main contention, and the lower court's central reason for its rulings, is that recording a deed restriction to golf course use is both necessary and sufficient to qualify real property as a "golf course" that should be valued under A.R.S. section 42–146(A). We disagree.

¶ 26 First, this proposition attributes an incorrect meaning to the term "condition" in the introductory clause of A.R.S. section 42–146(E). In ordinary English, "condition" is used to describe an occurrence or state of affairs without which some event, obligation, or legal relationship cannot arise. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 473 (1971); *see also* BLACK'S LAW DICTIONARY 293 (6th ed.1990) (defining condition as "[a] future and uncertain event upon the happening of which is made to depend the existence of an obligation"). Thus, contrary to the taxpayers' and the superior courts' analyses, "condition" does not mean an occurrence or state of affairs that is sufficient to require valuation under section 42–146(A). The "condition" in the introductory clause of section 42–146(E) establishes only that recording a deed restriction is necessary before the property may be valued under section 42–146(A). It does not establish that recording a deed restriction is sufficient to require valuation under section 42–146(A).

¶ 27 We believe that the recording of the deed is not, by itself, sufficient to require valuation under section 42–146(A) because such a reading would ignore the other language of subsection A. *See Williams v. Thude,* 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997) ("Each word, phrase, clause, and sentence [of a statute] must be given meaning so that no part will be void, inert, redundant, or trivial." [citation omitted] ). A.R.S. section 42–146(A) provides as follows:

> In recognition of the importance of the open space and economic benefits of golf courses, all golf courses shall be uniformly valued based on guidelines prescribed by the department. Subject to subsection E of this section, values shall be made on the assumption that no other property use is possible, and the land shall be valued at five hundred dollars per acre. Improvement value of the golf course is established by the department's 1988 per hole cost, as prescribed in subsection C of this section for the grade of the golf course as described in the department's assessment

practices manual for golf course assessment effective January 1, 1986. The per hole cost shall be multiplied by the number of holes included. The value shall be adjusted to reflect the application of economic obsolescence which shall be determined uniformly in the following manner.

1. Determine the number of actual rounds played during the most recent twelve months ending July 31.

2. Multiply the rounds played during the peak month by twelve to determine the number of rounds of play the course would have had under optimum conditions.

3. Divide the actual number of rounds played during the year by the optimum rounds played.

4. The quotient is the relationship between the actual rounds played and projected play under optimum conditions ... after the economic obsolescence has been deducted.

5. Apply the obsolescence by multiplying the total per hole cost by the per cent good.

6. The obsolescence factors developed through the application of the procedures outlined in paragraphs 1 through 5 of this subsection shall be applied to the data submitted annually by golf course owners and managers on a form as prescribed by the department.

7. Add the replacement cost new less the depreciation for the structures and additional items to determine the full cash value of the facility improvements.

8. To determine the full cash value of the golf course, add the per acre value as reflected in this section, the valuation of the golf course improvements adjusted for obsolescence pursuant to paragraphs 1 through 6 of this subsection, and the valuation of the structures and additional items pursuant to paragraph 7 of this subsection.

¶ 28 The special golf course valuation method comprises two distinct elements: (1) land value is to be fixed at $500.00 per acre, and (2) improvement value is to be determined through a protocol that applies projected economic obsolescence to DOR's 1988 per-hole cost. The improvements valuation component depends on the number of "actual rounds played" during a period preceding the valuation date. It plainly presupposes that the golf course to be valued is complete and in use. Moreover, despite the qualitative differences between the two valuation components, the legislature elected to promulgate the special golf course valuation method as a unit contained entirely within a single subsection of A.R.S. section 42–146. We infer from this approach, as we inferred from the definition of "golf course" in A.R.S. section 42–146(G), that the legislature intended the special golf course valuation method to be applied only to completed, operational golf courses. Accordingly, any reading of the statute that does not account for how the valuation method is applied would also mistake when the method should be applied.

¶ 29 In short, by adopting the valuation method specified in section 42–146(A), the legislature intended to provide a tax benefit to golf course owners based on the economic benefits the courses provided. Subsection A's valuation criteria recognize that these benefits flow only from an operational golf course. Thus, the tax benefit is appropriately only applied to an operational golf course.

¶ 30 The taxpayers' argument that they would suffer penalties for changing the property's use after filing the deed restriction actually supports our conclusion. The statute requires the penalties to be paid precisely because the taxpayers' failure to use the land as a golf course has deprived the state of the economic benefits it would have realized from an operational golf course.

■ ¶ 31 Nor are we persuaded that the Department of Revenue's ASSESSMENT PROCEDURES MANUAL (1995) ("Manual") supports the taxpayers' interpretation of section 42–146(E). The Manual states in relevant part:

A.R.S. § 42–146.E requires a binding legal commitment to use a parcel of land as a golf course for a period of at least 10 years. Where this occurs, the ownership rights associated with the parcel have been limited and a legal impediment to development has been imposed.

It shall be the responsibility of the golf course owner to record a deed restriction

with the County Recorder, with a copy to the Assessor, restricting the property use to a golf course for at least 10 years. Upon receipt of the recorded restriction to use, the Assessor shall determine the valuation based on this guideline.

*Id.* at 2.2C9.

¶ 32 Nowhere in Chapter 2, Subsection C, pertaining to Golf Courses, does the Manual refer either to partially completed golf courses or to golf courses under construction. Subsection C instead uniformly discusses the valuation and classification of completed, operational golf courses containing improvements. Subsection C begins by stating, "A golf course consists of a large tract of land, supporting facilities and improvements devoted to the sport of golf." *Id.* at 2.2C1. The section that precedes the passage on which the taxpayers rely establishes 11 grades of golf courses "for use in valuing golf courses for ad valorem tax purposes." These grades and the associated designations are as follows:

| | |
|---|---|
| GCA | Golf Course, Minimal Quality |
| CB | Golf Course, Simple Design |
| GCC | Golf Course, Good Design |
| GCD | Golf Course, Championship |
| GCE | Golf Course, Miniature, Budget |
| GCF | Golf Course, Miniature, Standard |
| GCG | Golf Course, Pitch & Putt |
| GCH | Golf Course, Par 3 |
| GCHE | Golf Course, Par 3 Expensive |
| GCJ | Golf Course, Executive |
| GCK | Driving Range |

There is no designation or description for "Golf Course, Under Construction" or "Golf Course, Partially Completed."

¶ 33 Finally, the two paragraphs that immediately precede the passage on which the taxpayers rely recognize that golf courses can be built on land that is not suitable for other purposes:

**2.** For the purpose of classification of property under this section, partially completed or vacant improvements on the land including improved common area tracts shall be classified according to their intended use as demonstrated by objective evidence. For property not valued by the department, an improvement on the land is considered to be partially completed when the foundation of the structure or structures to be located on the property is in place. The only portion affected by the reclassification is the improvement on the land and that portion of the land that is necessary to support the use of the struc-

Golf courses are frequently built on land that is not readily adaptable to commercial, industrial or residential development. A golf course can operate effectively on land subject to noise pollution, flooding or used to provide a drainage system for a developed area.

The land comprising the golf course playing area, practice area (not including commercial golf practice ranges), and parking area will be valued at $500 an acre for ad valorem tax purposes. A.R.S. § 42–146.A. That portion of land used for the club house, pro shop, restaurant, or similar buildings or improvements not included in the total course deed restriction, will be valued comparably with similar land used for commercial purposes.

*Id.* at 2.2C9. Again, these paragraphs contain no reference to land restrictively deeded as a golf course but on which there is no operational golf course.

¶ 34 The entire discussion in Chapter 2, Subsection C of the Manual presupposes a complete, operating golf course. Read in context, the passages cited by the taxpayers do not establish that recording the deed restriction is sufficient to require valuation under A.R.S. section 42–146(A).

██ ¶ 35 Finally, the parties have devoted significant space in their briefs to debating whether their cases raise a "valuation classification" issue or a "classification" issue. To the extent the cases before us deal with classification, we think A.R.S. section 42–162(B) [2] is consistent with the view we adopt here. Under that statute, the legislature has chosen to allow the "intended use" of "partially completed or vacant improvements" to affect the classification of "the improvement[s] on the land and that portion of the

ture or structures, except that common area tracts in residential developments associated with partially completed improvements shall receive the same classification as the partially completed improvements. Property that is not valued by the department, that does not have a structure or structures and that is actively used for commercial purposes shall be classified as prescribed by subsection A of this section. This subsection does not apply to property that is classified as agricultural pursuant to § 42–167.

A.R.S. § 42–162(B).

land that is necessary to support the use of the structure or structures. . . ." Here the record is devoid of evidence that either of the properties the taxpayers wished to have valued as golf courses as of January 1, 1995, contained partially completed or vacant structures.

¶ 36 Neither taxpayer's property was entitled to valuation under A.R.S. section 42–146(A). Because we so hold, we need not consider the County's alternative contention that valuation under section 42–146(A) should have been disallowed because neither taxpayer's property met the "current use" requirement of A.R.S. section 42–141(A)(5). We also need not consider the County's contention that the courts below erred in entering judgment setting particular valuations for the taxpayers' properties under A.R.S. section 42–146 and in denying the County's motion for new trial as against taxpayer PhxAz.

¶ 37 Each taxpayer requests its attorney's fees on appeal under A.R.S. section 12–348(B). Because neither taxpayer has prevailed, we deny the requests.

## CONCLUSION

¶ 38 We reverse and remand the judgments with directions to enter judgment reinstating the State Board of Equalization's 1995 tax valuation of the Kierland Golf Course, owned by taxpayer PhxAz Limited Partnership, and the Maricopa County Assessor's 1995 valuation of the Grayhawk Raptor Golf Course, owned by taxpayer CN Residential Limited Partnership.

GARBARINO, P.J., and GERBER, J., concur.