475 P.2d 513

Gaylon Ammond LOGAN, Appellant,

v.

Frank EYMAN, Warden, Arizona State Prison, County of Pinal, State of Arizona, Keith E. Edwards, Chairman, Bureau of Pardons & Paroles, State of Arizona, Appellees.

No. 2 CA–CIV 799.

Court of Appeals of Arizona,

Division 2.

Oct. 21, 1970.

Rehearing Denied Nov. 10, 1970.
Review Denied Jan. 5, 1971.

**224**

Meadow, Thrasher & Zalut, by Henry L. Zalut, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., Phoenix, by Carl Waag and John S. O'Dowd, Asst. Attys. Gen., Tucson, for appellees.

KRUCKER, Judge.

Gaylon A. Logan appeals from a Pinal County Superior Court order entered September 23, 1969, denying a writ of habeas corpus.

In July, 1963, Mr. Logan plead guilty to the crime of second-degree rape. He was adjudged guilty thereof and sentenced to a term of not less than five nor more than seven years in the Arizona State Prison. Appeal was taken to the Arizona Supreme Court, and Logan was released on bond. The appeal challenged only the severity of the sentence, and on June 23, 1965, the conviction was affirmed. State v. Logan, 98 Ariz. 179, 403 P.2d 279 (1965). An order affirming the judgment was entered September 28, 1965. On October 15, 1968, a bench warrant was issued at the request of the Maricopa County Attorney, Logan was arrested and committed to the state prison to commence serving his sentence.[1]

Thus we find an interval of five years between sentencing and arrest, and a period of more than forty months from the date the conviction was affirmed and the date of arrest.

Where was Logan and what was he doing during this time? It appears that Lo-

gan had married in February, 1962, and until 1964 had lived with his wife and parents in Phoenix, Arizona. Thereafter, he and his wife moved to another residence in Phoenix, during which time Logan was gainfully employed. Subsequently, in June, 1965, the couple moved to San Francisco, California, where Logan was gainfully employed and also furthered his education by receiving a certificate in general business.

In January, 1968, the Logans returned to Phoenix, where they lived with Logan's parents for a brief time and then moved to another Phoenix address where they resided until his arrest in October, 1968. At that time, the couple had three children, ages 8, 7, and 4. From approximately March, 1968, until his arrest, Logan was employed as a payments clerk at the Arizona Bank, Phoenix, where he handled cash transactions for payments on vehicles being financed.

Logan admitted at the hearing below that he knew his conviction had been affirmed on appeal, but states that he was told that "I wouldn't have to turn myself in for incarceration." In other words, it was his understanding that someone would come out and pick him up.

It was Logan's position in the lower court, as on appeal, that it would be manifestly unjust and a denial of due process to permit his incarceration after the time lapse herein involved.

We agree that prompt enforcement of sentences should be an objective of criminal law and we concede that Logan's post-conviction conduct indicates that the rehabilitative purpose of punishment may have been accomplished. However, there is no statute of limitations or estoppel against the enforcement of a valid, unsatisfied judgment imposing a sentence, nor can the delay in execution on such judgment waive the State's right or work an estoppel against it. 24B C.J.S. Criminal Law § 1999.

We are cognizant of cases such as State ex rel. Shotkin v. Buchanan, Fla.App., 149

---

1. These facts are recited in the petition for a writ of habeas corpus and admitted in the response thereto.

So.2d 574 (1963), and Ex parte Bugg, 163 Mo.App. 44, 145 S.W. 831 (1912) in which appellate courts refused to enforce judgments when the execution of sentence had been so long delayed without the defendant's fault that society could no longer have any interest in its enforcement. These two decisions are unique and rest upon the peculiar circumstances of each case, but it is worthy of note that in neither case had an appeal been taken—the lengthy delays occurred between imposition of sentence and ultimate enforcement. Where the delay in committing a defendant occurs after a conviction is affirmed on appeal, such delay does not preclude enforcement. *See,* Annot. 98 A.L.R.2d 687 § 2[c] and cases cited therein.

In the case of Volker v. McDonald, 120 Neb. 508, 233 N.W. 890 (1931), the defendant was sentenced to prison for a term of one to seven years and the judgment was affirmed on appeal. However, ten years elapsed from issuance of the mandate until the defendant was arrested, and the defendant had never offered to surrender himself. It was held that since the defendant was charged with knowledge of the status of his case, he should have promptly surrendered himself.

In the case of In re Schantz, 26 N.D. 380, 144 N.W. 445 (1913), the court held that it was the duty of the defendant to surrender himself to the penalty of the law and that time was not the essence of the judgment since defendant had not made it so by demanding that it be immediately carried out, hence he could not profit by a delay to which he had assented.

We note parenthetically that when Logan was admitted to bail pending his appeal, he undertook to surrender himself in execution of the judgment and sentence in the event of affirmance. Rule 53, Rules of Criminal Procedure, 17 A.R.S.

2. Logan was admitted to bail pending this appeal. Although the State did not challenge the propriety thereof, except at the time of oral argument, we have held that

 We hold, therefore, that it was Logan's duty to surrender himself when the Supreme Court of Arizona affirmed his conviction. Not having attempted to do so, he cannot shift the onus of non-enforcement of the sentence to the State. When a defendant effects the postponement of the "fatal day" for payment of the penalty exacted by the law for his offense, he waives the right to claim that "time is of the essence" for enforcement of his sentence. Weber v. Mosley, 241 Mo.App. 727, 242 S.W.2d 273 (1951).

Appellant's remedy is to present his case to the governmental authority which has power to commute his sentence—courts cannot usurp this power.

The order denying the petition for the writ of habeas corpus is affirmed.[2]

HOWARD, C. J., and HATHAWAY, J., concur.

an applicant, appealing from a denial of a writ of habeas corpus, is not entitled to bail. Burr v. Frey, 2 Ariz.App. 238, 407 P.2d 779 (1965).