951 P.2d 449

## Stephen James SCHWICHTENBERG, Appellant.

v.

## STATE of Arizona; Arizona Department of Corrections; Terry L. Stewart, Director; Arizona Board of Executive Clemency; Michael Garvey, Executive Director, Appellees.

### No. CV–97–0166–PR/A.

Supreme Court of Arizona, En Banc.

Dec. 24, 1997.

Toles & Associates by M. Jeremy Toles, Craig C. Gillespie, Phoenix, for Appellant.

Grant Woods, Attorney General by Darrin J. DeLange, Assistant Attorney General, Phoenix, for Appellees.

MOELLER, Justice.

## STATEMENT OF THE CASE

¶ 1 The Arizona Department of Corrections ("DOC") erroneously released plaintiff James Schwichtenberg ("Plaintiff") from prison in 1985. In 1996, plaintiff made alternative administrative requests for a certificate of absolute discharge, for credit toward his sentence for the time he was at liberty, or for commutation. His requests were denied and DOC ordered plaintiff to self-report to serve his sentence. Plaintiff sued in superior court, which denied relief. The court of appeals affirmed by decision order. On the facts of this case, we conclude that plaintiff is entitled, under applicable Arizona law, to credit on his sentence for the time he was at liberty. Accordingly, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On January 9, 1980, plaintiff received a sentence of 10 to 12 years for grand theft by embezzlement. He was later paroled and, while on parole, he was charged with two counts of burglary and two counts of aggravated assault. Based on these new charges, his parole was revoked. Thereafter, plaintiff pled guilty to second degree burglary and the other new charges against him were dismissed. He received a sentence of 5.25 years to be served consecutively to his grand theft sentence.

¶ 3 Normally, a sentencing order is forwarded by the sentencing court to DOC. Here, the sentencing order on the consecutive sentence was either (1) not sent to DOC by the superior court, or (2) sent but not received, or (3) lost after receipt by DOC. DOC, therefore, was unaware of plaintiff's consecutive sentence on August 21, 1985, when it released him from custody on his first sentence. This release was a temporary release and plaintiff remained under the supervision of the DOC until he received an absolute discharge from DOC on March 8, 1986.

¶ 4 Nearly ten years later, in February of 1996, plaintiff filed petitions with both the Arizona Board of Executive Clemency and with the Offender Services Bureau of DOC. The petitions requested one of the following alternative remedies: (1) a certificate of absolute discharge of imprisonment from his burglary sentence, presumably under Arizona Revised Statutes (A.R.S.) § 13-906; (2) credit for the time that he was mistakenly or illegally paroled or released from DOC, under case law; or (3) commutation of his sentence, pardon, reprieve, or other appropriate relief from the Arizona Board of Executive Clemency, under A.R.S. §§ 31-401 to -446.

¶ 5 The Board of Executive Clemency forwarded his petition to the Director of DOC, on the theory that if the Director of DOC granted relief, the commutation of plaintiff's sentence would be moot. The Offender Services Bureau also forwarded his petition to the Director of DOC. The Director denied both requested remedies and ordered plaintiff to report to a DOC reception center to begin serving his burglary sentence. After the decision by the Director of DOC, the Board of Executive Clemency concluded that because plaintiff had not served at least two years of his sentence, he was not eligible for commutation.

¶ 6 Plaintiff then filed a "Complaint/Petition for Special Action" in the superior court requesting the relief which had been administratively denied him.[1] The superior court accepted the petition as a special action, but denied relief.

¶ 7 The superior court concluded that plaintiff knew or reasonably should have known that his release was premature. Based on this finding concerning plaintiff's knowledge and the court's understanding of the law, the superior court lifted the stay it had previously entered and ordered plaintiff to commence serving his burglary sentence. The superior court did, however, grant plaintiff certain credits toward his sentence on the theory that such credits would have been earned had plaintiff been in custody.

¶ 8 Plaintiff appealed to the court of appeals. In a decision order issued pursuant to Ariz. R. Civ.App. P. 29, the court of appeals affirmed. In doing so, it stated that it had to determine whether the superior court's decision was "arbitrary and capricious or an abuse of discretion." Ariz. R. Sp. Act. 3(c). Although the court stated it would defer to the superior court's findings of fact, it held that it was not bound by its legal conclusions. It held that the only questions on appeal were questions of law and proceeded to decide independently whether plaintiff was entitled to relief under the applicable law.

¶ 9 The court of appeals considered two different theories which courts have used to

grant relief to an inmate in such situations. Some courts have granted an inmate credit for his or her time at liberty as if he or she had been in custody ("installment theory"). Others have forgiven the sentence of imprisonment ("waiver of jurisdiction theory"). The court of appeals held that Arizona had adopted the installment theory, but that it was inapplicable in this case because plaintiff was partially to blame for his erroneous release. Accordingly, the court of appeals affirmed. We granted review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), Ariz. R. Civ.App. P. 23, and Ariz.Rev.Stat. Ann. § 12–120.24.

## QUESTION PRESENTED

¶ 10 Whether plaintiff is entitled to any relief when the state attempts to have him serve a 5.25 year sentence 11 years after the state erroneously released him.

## DISCUSSION

### I. Standard of Review

¶ 11 We will not disturb a superior court's findings of fact unless clearly erroneous. *Arizona Bd. of Regents v. Phoenix Newspapers, Inc.*, 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991). With a single exception, plaintiff and defendants agree on the facts of this case. Their one disagreement concerns the superior court's finding that plaintiff knew or reasonably should have known that his release was erroneous. Although no evidentiary hearing concerning this issue was held, for purposes of this appeal we will assume that the superior court's finding was correct because it does not affect the outcome of the case.

¶ 12 We are not "bound by the trial court's conclusion of law." *Id.* We are "free to draw our own conclusions of law from the facts found by the trial court." *Id.* Therefore, we draw our own legal conclusions from the undisputed or assumed facts of this case.

---

1. The Arizona Board of Executive Clemency and its Director, Michael Garvey, filed a motion to dismiss which was granted on June 27, 1996.

Plaintiff did not appeal that order and consequently those parties are not involved in this appeal.

## II. Analysis of Theories That May Entitle Plaintiff to Relief

¶ 13 When an inmate is erroneously released, American courts have articulated three principal theories under which a person such as the plaintiff in this case may be entitled to relief: the waiver of jurisdiction theory, the estoppel theory, and the installment theory (also known as the doctrine of credit for time at liberty). Although the theories are similar, they may, in a given case, produce different remedies for erroneously released inmates. We will examine them separately before inquiring into the state of Arizona law on the issue.

### A. Waiver of Jurisdiction Theory

¶ 14 The waiver of jurisdiction theory stems from the Due Process Clause of the Fourteenth Amendment of the United States Constitution ("Due Process Clause") which "requires that action by a state through any of its agencies ... be consistent with the fundamental principles of liberty and justice." *Shields v. Beto,* 370 F.2d 1003, 1004 (5th Cir.1967) (citing *Buchalter v. People of the State of New York,* 319 U.S. 427, 63 S.Ct. 1129, 87 L.Ed. 1492 (1943)). Under the waiver of jurisdiction theory, the government waives "the right to reincarcerate when its agents' actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." *Green v. Christiansen,* 732 F.2d 1397, 1399 (9th Cir.1984) (citations omitted). If the government's actions do not rise to a level sufficient to invoke the waiver of jurisdiction theory, the inmate must serve his or her entire sentence.

### B. Estoppel Theory

¶ 15 Estoppel is an equitable remedy, a "judicially devised doctrine." 31 C.J.S. *Estoppel and Waiver* § 58 (1996). Although estoppel is based on equity, courts have sometimes considered it in conjunction with the waiver of jurisdiction theory, suggesting that both theories arise from the same legal doctrine, i.e., the Due Process Clause. *See U.S. v. Martinez,* 837 F.2d 861, 864 (9th Cir.1988). Under the estoppel theory, the government is estopped from reincarcerating an inmate when the following four tests are met:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

*Christiansen,* 732 F.2d at 1399 (citations omitted). If the inmate cannot meet all four tests, relief under the estoppel theory is foreclosed, and the inmate must serve his or her entire sentence.

### C. Installment Theory

¶ 16 The installment theory is based on notions of fairness. In the seminal case on the installment theory, an inmate who was about to be released told the warden that his release was premature, but was nevertheless "ejected from the penitentiary." *White v. Pearlman,* 42 F.2d 788, 789 (10th Cir.1930). The court held that "where a prisoner is discharged from a penal institution, without any contributing fault on his part ... his sentence continues to run while he is at liberty." *Id.* To be eligible for credit, the inmate must show "simple or mere negligence on behalf of the government and [that] the delay in execution of sentence was through no fault of his own." *Martinez,* 837 F.2d at 865 (citations omitted).

¶ 17 There are variations of the installment theory. The Ninth Circuit, for example, does not take into account post-release conduct in deciding whether to award credit for time at liberty. *See id.* at 865–66. It also does not consider an inmate "at fault" if the inmate is silent when he or she is erroneously released. *See id.* at 866 (defendant does not have affirmative duty to aid in execution of his or her sentence).

¶ 18 On the other hand, some state courts have taken into account an inmate's post-release conduct and have considered an inmate's silence when the inmate knows the government is erroneously releasing him or her, along with the previously mentioned cri-

teria in deciding whether to grant credit for time at liberty. *See Brown v. Brittain,* 773 P.2d 570, 574–575 (Colo.1989); *In re Messerschmidt,* 104 Cal.App.3d 514, 163 Cal.Rptr. 580 (1980). *Pearlman* did not mention post-release conduct, and stated that "[a]s to whether a prisoner, who knows a mistake is being made and says nothing, is at fault, we do not now consider." 42 F.2d at 789.

## III. Application of These Theories in Arizona

### A. Waiver and Estoppel Theories

¶ 19 In this case, Division One of the court of appeals relied on the Division Two case of *Logan v. Eyman,* 13 Ariz.App. 223, 475 P.2d 513 (1970), for the proposition that the waiver and estoppel theories are unavailable in Arizona. In *McKellar v. Arizona State Dep't of Corrections,* 115 Ariz. 591, 566 P.2d 1337 (1977), decided seven years after *Logan,* this court mentioned those two theories but, because they were inapplicable to the case, did not rule on their validity in Arizona. Because we dispose of this case under the installment theory, it is unnecessary for us to decide whether either of the other theories might apply in another case.

### B. Installment Theory

¶ 20 We adopted the installment theory in *McKellar.* In that case, DOC mistakenly released an inmate on parole before his earliest release date through no fault of the inmate. *Id.* at 592–93, 566 P.2d at 1338–39. DOC reincarcerated him about three months later. *Id.* at 593, 566 P.2d at 1339.

¶ 21 We observed that *McKellar* was not as extreme a case as those in which the government attempted to reincarcerate an erroneously released inmate after many years, and through "waiver" or "estoppel" theories had been "prohibited from reasserting jurisdiction over prisoners wrongfully released." [2] *Id.* (citing *Lanier v. Williams,* 361 F.Supp. 944 (E.D.N.C.1973) (government

waived jurisdiction over inmate following a five-year gap between erroneous release and attempt at reincarceration)). We held that "[t]he state's error must not, however, work to appellant's further detriment since he was in no way at fault. He shall be credited with the time he was illegally paroled...." *Id.* at 594, 566 P.2d at 1340 (citing *Pearlman,* 42 F.2d at 788). An inmate is also entitled to any good time credits he or she would have earned had he or she been incarcerated. *See State v. Davis,* 148 Ariz. 62, 66, 712 P.2d 975, 979 (App.1985).

¶ 22 DOC argued that *McKellar* is distinguishable upon three grounds:

1) there is no proof that DOC, as distinguished from the superior court, made the mistake leading to the erroneous release of the plaintiff;

2) plaintiff has not served any time on his burglary sentence and thus he would not be serving that sentence in installments, and

3) plaintiff remained silent when he knew DOC was releasing him and is therefore at fault.

The court of appeals was correct in holding that it is irrelevant which state entity made the mistake that led to the erroneous release. As we have previously stated in these types of cases, they should not "lead to different results because different state agencies made the errors. All the errors lead to the same result: detrimental effect on an inmate's release date." *Tittle v. State,* 169 Ariz. 8, 10, 816 P.2d 267, 269 (App.1991). We also agree with the court of appeals' holding that, under the installment theory, an inmate has the right not only to serve one sentence uninterrupted, but to serve consecutive sentences uninterrupted.

¶ 23 The court of appeals, however, decided that plaintiff's silence during his erroneous release made him culpable. Since this silence made plaintiff "at fault" for his

---

2. We believe the *McKellar* court incorrectly included the "credit" theory (the installment theory) in its discussion on this point. The installment theory does not prohibit reassertion of jurisdiction; instead, it grants credit during the time of release. If, in doing so, the sentence is deemed complete, the inmate is free from further incarceration. That is not a prohibition of reincarceration; rather, the inmate is deemed to have already served his or her entire sentence.

erroneous release, the court denied him credit for his time at liberty. For plaintiff to be at fault, he must either have done something he was not entitled to do or refrained from doing that which he had a duty to do. It is agreed that he did not do anything he was not entitled to do. The question is whether he refrained from doing something he had a duty to do. Concretely, the question is whether plaintiff had a duty to tell DOC that it was making a mistake when it erroneously released him, i.e., a duty to aid in the execution of his sentence.

¶ 24 While informing DOC of the potential error would have been the right thing to do, plaintiff was under no legal obligation to do so. Furthermore, deciding whether an inmate knew or reasonably should have known that his release was erroneous would, in many cases, be difficult or impossible. Inmates' intelligence and knowledge of the penal system vary. Such a standard would require that inmates keep abreast of numerous statutes and statutory changes, together with DOC rules and regulations and other policies that change from time to time and may be dependent on prison population concerns. This task is best left to the DOC. Imposing such a duty upon inmates is wholly impractical and foreign to our system of justice.

¶ 25 Therefore, the plaintiff's assumed failure to advise DOC of the state's error does not render him "at fault." Thus, under established Arizona law, he is entitled to credit for his time at liberty under the installment theory. Because that time in this case exceeds the sentence, DOC is barred from reincarcerating him. Because plaintiff's sentence has expired, this case presents no occasion to decide whether Arizona would or would not consider post-release conduct in deciding whether an erroneously released prisoner must serve his or her unexpired sentence.

### CONCLUSION

¶ 26 The decision order of the court of appeals is vacated and the judgment of the superior court is reversed. This case is remanded for entry of judgment consistent with this opinion.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MARTONE, JJ., concur.