962 So.2d 1040 (2007)
Jerome GAINES, Petitioner,
v.
FLORIDA PAROLE COMMISSION and The Florida Department of Corrections, Respondents.
No. 1D06-4172.
District Court of Appeal of Florida, First District.
August 14, 2007.
*1041 Jerome Gaines, pro se, Petitioner.
Kim Fluharty, General Counsel, and Bradley R. Bischoff, Assistant General Counsel, Florida Parole Commission, Tallahassee; Kathleen Von Hoene, General Counsel, and Marjorie C. Holladay, Assistant General Counsel, Florida Department of Corrections, Tallahassee, for Respondents.
PER CURIAM.
Jerome Gaines seeks certiorari review of an order of the circuit court denying his petition for writ of mandamus. We conclude that the circuit court did not violate any clearly established principle of law or otherwise depart from the essential requirements of law when it denied relief. Accordingly, we deny the petition for writ of certiorari on the merits as to that issue.
In 1992, Gaines entered a plea to one count of second-degree murder and was sentenced to a term of 20 years' imprisonment. In April 2000, he was released from the custody of the Department of Corrections ("DOC") to conditional release supervision, but following the filing of a violation report, the Florida Parole Commission issued a warrant for petitioner's arrest. Gaines was arrested on February 17, 2001, and was detained at the Dade County Jail pending a hearing on the revocation of conditional release. A revocation hearing was conducted on February 23, 2001, at which Gaines conceded guilt, and offered testimony in mitigation of his conduct. The hearing officer recommended that conditional release be revoked, and on April 4, 2001, the Parole Commission issued its order revoking petitioner's conditional release and directing his return to DOC custody.
On June 5, 2001, while still housed in the Dade County Jail, petitioner wrote a letter to the Parole Commission, acknowledging that he had received notice of the revocation order and questioning when he would be returned to the custody of DOC. Six days later, on June 11, 2001, officials at the Dade County Jail mistakenly released Gaines. According to Gaines, he asked jail officials why he was being released, was told that there was nothing indicating anything about "probation" in the jail's paperwork, and he thus assumed that he was a "free man." He does not allege, however, that he called the Parole Commission's revocation order to the attention of jail officials. Gaines was ultimately arrested in New York on September 5, 2003, and was shortly thereafter returned to DOC to complete service of his 20-year sentence.
Upon petitioner's return to DOC custody, an investigation and hearing were conducted by DOC for the purpose of determining petitioner's entitlement to credit for the time following his mistaken release from custody until his arrest in New York. The hearing team determined that petitioner knew that his conditional release supervision had been revoked and that he would be returned to prison, and that after he was mistakenly released, he fled the state to avoid being returned to prison. Based on these findings, the hearing team recommended that petitioner receive no *1042 credit for time spent at liberty. Consistent with that recommendation, DOC has not granted Gaines that credit.
After unsuccessfully pursuing his administrative remedies, Gaines filed his petition for writ of mandamus in the circuit court, seeking an award of credit for the time he spent out of custody following his release. The circuit court granted petitioner's request for leave to proceed as an indigent below, but pursuant to section 57.085, Florida Statutes, ordered that a lien be placed on petitioner's inmate trust account for the full amount of filing fees and costs incurred in connection with the circuit court proceedings. Gaines moved to strike the lien, arguing that his claim constituted a collateral criminal proceeding and thus was exempt from the lien provisions of section 57.085, but the circuit court denied that motion. The circuit court thereafter denied mandamus relief, finding that petitioner had failed to establish a clear legal right to the credit sought, and Gaines now seeks certiorari review of the circuit court's ruling.
The scope of "second-tier" certiorari review by this court is limited to determining whether the circuit court afforded procedural due process and whether it observed the essential requirements of law. See Sheley v. Fla. Parole Comm'n, 703 So.2d 1202, 1206 (Fla. 1st DCA 1997), approved, 720 So.2d 216 (Fla.1998). A ruling constitutes a departure from the essential requirements of law when it amounts to a "violation of a clearly established principle of law resulting in a miscarriage of justice." See Tedder v. Fla. Parole Comm'n, 842 So.2d 1022 (Fla. 1st DCA 2003). The departure must be more than a simple legal error to justify certiorari relief. See Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003). Given the narrow scope of review, this court may not reach a different result simply because it is dissatisfied with the result reached by the circuit court. See Ivey v. Allstate Ins. Co., 774 So.2d 679 (Fla.2000); Dep't. Of Highway Safety & Motor Vehicles v. Roberts, 938 So.2d 513 (Fla. 5th DCA 2006); Sylvis v. State, 916 So.2d 915 (Fla. 5th DCA 2005).
Gaines makes no claim that he was deprived of procedural due process below, and the issue before the court is thus whether the circuit court's ruling on the merits violated a clearly established principle of law, resulting in a miscarriage of justice. The equitable doctrine of granting credit for time erroneously spent at liberty appears to have its modern origins in the Tenth Circuit's 1930 decision in White v. Pearlman, 42 F.2d 788 (10th Cir. 1930). In Pearlman, the prisoner was prematurely and mistakenly "ejected" from the state penitentiary, despite pointing out to the warden that there must have been some mistake, and that his sentence had not expired. Affirming the district court's granting of habeas corpus relief, the Tenth Circuit held that "where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, . . . his sentence continues to run while he is at liberty." 42 F.2d at 789. In Florida, the rule is commonly stated as follows:
When a prisoner is released or discharged from prison by mistake, he may be recommitted if his sentence would not have expired had he remained in confinement. Unless interrupted by a violation of parole or some fault of the prisoner, the sentence continues to run while the prisoner is at liberty, and the prisoner's sentence must be credited with that time.
Carson v. State, 489 So.2d 1236, 1238 (Fla. 2d DCA 1986) (citations omitted); see also Waite v. Singletary, 632 So.2d 192 (Fla. 3d DCA 1994); State v. Mendiola, 919 So.2d 471 (Fla. 3d DCA 2005).
*1043 This court stated the principle in somewhat different terms in Sutton v. Department of Corrections, 531 So.2d 1009 (Fla. 1st DCA 1988), recognizing that "when a prisoner is released from prison by mistake, his sentence continues to run in the absence of some fault on his part." See also Drumwright v. State, 572 So.2d 1029, 1031 (Fla. 5th DCA 1991) (citing Pearlman for the proposition that "the sentence of a prisoner who is discharged without contributing fault continues to run while he is at liberty."). In terms of statutory law, section 944.405(1), Florida Statutes, provides in relevant part that if it is determined that an offender was released in error, DOC may issue a warrant "for retaking the offender into custody until he or she has served the remainder of the sentence or combined sentences," but the statute is silent with respect to the question of credit for time spent at liberty.[1]
In Pearlman, the court specifically declined to address the issue presented by this case, stating that "[a]s to whether a prisoner, who knows a mistake is being made and says nothing, is at fault, we do not now consider." 42 F.2d at 789. DOC is unaware of any Florida case law addressing this question, and our research has likewise disclosed no such case law. Outside of Florida, there appears to be a split in authority on this question. Some jurisdictions hold that a prisoner's silence when he or she knows or should know that the release is in error does not constitute "fault" because a prisoner does not have an affirmative duty to aid in the execution of his or her sentence. See, e.g., U.S. v. Martinez, 837 F.2d 861 (9th Circuit 1988); Schwichtenberg v. State, 190 Ariz. 574, 951 P.2d 449 (1997). Others, however, appear to consider an inmate's silence in the face of a knowingly erroneous release, or alternatively, an effort by the inmate to inform the releasing authority of the apparent mistake, to be relevant factors in deciding whether to grant credit for time spent at liberty. See Pugh v. State, 563 So.2d 601 (Miss.1990); Brown v. Brittain, 773 P.2d 570 (Colo.1989); cf. Commonwealth v. Blair, 699 A.2d 738 (Pa.Super.Ct.1997).
In view of the absence of controlling authority on this point, we conclude that the circuit court did not depart from any clearly established principle of law when it determined that Gaines had failed to demonstrate a clear and indisputable legal right to be granted credit for the time he spent at liberty. The record supports DOC's finding that Gaines knew or should have known that his release was in error, and there is no indication that he either attempted to call that apparent error to the attention of Dade County Jail authorities, or contacted Parole Commission or DOC officials following his release. Given those circumstances, there would appear to be no clear provision in Florida law entitling him to credit for the time he spent at liberty, and it was thus not a departure from the essential requirements of law for the circuit court to so conclude.
However, we agree with petitioner that because his claim below constituted a "collateral criminal proceeding," the circuit court erred when it imposed a lien on his inmate trust account to recoup filing fees and costs. See Schmidt v. Crusoe, 878 So.2d 361 (Fla.2003); Cason v. Crosby, 892 So.2d 536 (Fla. 1st DCA 2005). Accordingly, *1044 we vacate the circuit court's order imposing a lien. On remand, the circuit court is directed to ensure that any funds collected pursuant to the improper lien are reimbursed to petitioner.
Petition for writ of certiorari GRANTED in part and DENIED in part.
PADOVANO and THOMAS, JJ., concur.
BENTON, J., concurs in part; dissents in part with opinion.
BENTON, J., concurring in part and dissenting in part.
When jailers release a prisoner prematurely through no fault of the prisoner, the sentence continues to run and the prisoner is entitled to credit accordingly. This is a clearly established principle of Florida law. See Carson v. State, 489 So.2d 1236, 1238 (Fla. 2d DCA 1986) ("[T]he prisoner's sentence must be credited with that time."). On this basis, I respectfully dissent from denial of the petition for writ of certiorari seeking review of denial of the mandamus petition Jerome Gaines filed to overturn the Department of Corrections' (DOC) denial of credit against his sentence for time he was at liberty after he was mistakenly set free. But I concur in vacating the circuit court's order imposing a lien.
A convict is entitled to finish a sentence he begins serving without arbitrary interruption, even by a prison warden's unauthorized grant of liberty. See State ex rel. Sitamore v. Kelly, 94 So.2d 726, 727 (Fla. 1957) ("[A] `convict has a right to pay his debt to society by one continuous period of imprisonment.'") (quoting State ex rel. Libtz v. Coleman, 149 Fla. 28, 5 So.2d 60, 61 (1941)).
When a prisoner is released or discharged from prison by mistake, he may be recommitted if his sentence would not have expired had he remained in confinement. Unless interrupted by violation of parole or some fault of the prisoner, the sentence continues to run while the prisoner is at liberty, and the prisoner's sentence must be credited with that time.
Carson, 489 So.2d at 1238 (citations omitted). See also State v. Mendiola, 919 So.2d 471, 472 (Fla. 3d DCA 2005) (explaining that the defendant was entitled to credit for time he was released from prison through no fault of his own); Drumwright v. State, 572 So.2d 1029, 1031 (Fla. 5th DCA 1991) ("The sentence of a prisoner who is discharged without contributing fault continues to run while he is at liberty."); Sutton v. Dep't of Corr., 531 So.2d 1009, 1009 (Fla. 1st DCA 1988) ("When a prisoner is released from prison by mistake, his sentence continues to run in the absence of some fault on his part.").
Sentenced to a term of twenty years' imprisonment in 1992, Mr. Gaines was placed on conditional release supervision on April 1, 2000. The Parole Commission revoked conditional release on April 4, 2001, and ordered him returned to the custody of DOC, effective retroactively to February 17, 2001, the date on which he had been arrested and locked up in the Miami-Dade County Jail, accused of violating certain conditions imposed on his release.
Still in the Miami-Dade County Jail on June 5, 2001, Mr. Gaines wrote a letter to the Parole Commission asking when he was to be returned to the custody of DOC. Six days later, jail officials released him from custody outright, albeit in error. The petitioner did not contribute to his erroneous release.[1] As far as can be told *1045 from the record, no warrant was issued by the DOC for his rearrest until June 9, 2003, more than two years after his mistaken release. Less than 90 days later, on September 5, 2003, he was arrested in New York.
DOC held a hearing in October of 2003, pursuant to Florida Administrative Code Rule 33-601.604, to determine whether he was entitled to credit for the time he spent at liberty.[2] The hearing team denied him any credit because they found that he knew that his conditional release had been revoked and that he was supposed to return to prison.[3] But there is no requirement that a mistakenly released prisoner picket outside the jail demanding to be let back in.
The decision in Drumwright, 572 So.2d at 1030, is instructive. There the defendant was sentenced to a term of thirty years' imprisonment, but a clerical error reflected the sentence as thirty months' imprisonment. Drumwright was released from prison six months after beginning his sentence. Cognizant that a person sentenced to thirty years' imprisonment and released after six months would hardly be unaware that the early release was an error, the court ruled that Drumwright was entitled to credit because he did not contribute to his erroneous release. Id. at 1031. Requiring no proof of any attempt to remain in prison despite the mistaken release, the court ruled that, because the error was not his, Drumwright was entitled to credit against his sentence for the time he spent outside prison. See id. at 1030-32.
Today's decision cannot be squared with controlling authority from our supreme court, see Libtz, 5 So.2d at 61, or with our own precedent. See Sutton, 531 So.2d at 1009. Since Jerome Gaines had "a clear legal right to the performance of a clear legal duty by a public officer, and [showed] that he has no other available legal remedies," Plymel v. Moore, 770 So.2d 242, 246 (Fla. 1st DCA 2000), the circuit court should have granted his petition for writ of mandamus.
NOTES
[1] Rule 33-601.604, F.A.C., governs DOC's "determination of credit when inmate is released in error." The current version of the rule, reflecting amendments made in 2005, expressly provides that "[c]redit will not be applied if it is determined that the inmate was aware of the error and made no attempt to notify the releasing authority." However, the version of the rule in effect at all times relevant to this proceeding provided only that "[c]redit will be applied if it is determined that the release involved no fault of the inmate."
[1] DOC argues that Mr. Gaines acquiesced in or consented to his release because he left custody knowing his release was a mistake. But the DOC has cited no authority for the proposition that such knowledge would change the result in any way. While the result might differ if a prisoner acquiesced in an interruption of his sentence by agreeing to parole or a conditional pardon, see, e.g., Terrell v. Wiggins, 46 So. 727, 727-29 (Fla.1908); State v. Horne, 42 So. 388, 393-94 (Fla.1906), there as no such agreement here.
[2] At the time of the hearing, Rule 33-601.604 required that any inmate released in error prior to the satisfaction of a sentence be interviewed and that the facts surrounding the release be collected. See Fla. Admin. Code. R. 33-601.604(1)-(2) (2003).

A fact finding due process hearing will be held to determine if the inmate is due credit for the time out of custody. Credit will be applied if it is determined that the release involved no fault of the inmate.
Fla. Admin. Code R. 33-601.604(3) (2003) (emphasis supplied). By virtue of, e.g., the ex post facto clause, a later version of the rule purporting to make credit depend on whether the inmate was aware of the error and made an attempt to notify the releasing authority has no bearing. See Fla. Admin. Code R. 33-601.604(3) (2007); 31 Fla. Admin. W. 960 (March 11, 2005) (amending the rule).
[3] In addition, DOC found that he fled the state, but there is no evidence that his relocation (eventually to New York) contributed to his release or even significantly extended the time he was out of prison: DOC made no attempt to rearrest him until two years later when they finally issued a warrant for his arrest.