Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/01/2016 09:05 AM CDT

THOMAS EVANS, APPELLANT, V. SCOTT R. FRAKES, DIRECTOR,
NEBRASKA DEPARTMENT OF CORRECTIONAL
SERVICES, ET AL., APPELLEES.

___ N.W.2d ___

Filed April 1, 2016.    No. S-15-453.

1. **Habeas Corpus: Appeal and Error.** On appeal of a habeas petition, an
   appellate court reviews the trial court's factual findings for clear error
   and its conclusions of law de novo.
2. **Habeas Corpus.** The habeas corpus writ provides illegally detained
   prisoners with a mechanism for challenging the legality of a person's
   detention, imprisonment, or custodial deprivation of liberty.
3. **Habeas Corpus: Probation and Parole.** A parolee is in custody under
   sentence and may seek relief through Nebraska's habeas corpus statute.
4. **Habeas Corpus: Proof.** To secure habeas corpus relief, the prisoner
   must show that he or she is being illegally detained and is entitled to the
   benefits of the writ.
5. **Habeas Corpus.** In a petition for writ of habeas corpus, if the plaintiff
   sets forth facts which, if true, would entitle him or her to discharge, then
   the writ is a matter of right, the plaintiff should be produced, and a hear-
   ing should be held thereon to determine questions of fact presented. If
   the plaintiff fails to show by the facts alleged in the petition that he or
   she is entitled to relief, then the relief is denied.
6. **Habeas Corpus: Jurisdiction.** A writ of habeas corpus will not lie to
   discharge a person from a sentence of penal servitude where the court
   imposing the sentence had jurisdiction of the offense and the person of
   the defendant, and the sentence was within the power of the court to
   impose, unless the sentence has been fully served and the prisoner is
   being illegally held.
7. **Courts: Jurisdiction.** A court that has jurisdiction to make a decision
   also has the power to enforce it by making such orders as are necessary
   to carry its judgment or decree into effect.

8. **Habeas Corpus.** A writ of habeas corpus is a proper remedy only upon a showing that the judgment, sentence, and commitment are void.

9. ____. To release a person from a sentence of imprisonment by habeas corpus, it must appear that the sentence was absolutely void.

10. **Due Process.** Applying the Due Process Clause to the facts of any given case is an uncertain enterprise which must discover what fundamental fairness consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

11. ____. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Gerald L. Soucie for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, and STACY, JJ.

WRIGHT, J.

## NATURE OF CASE

This is an appeal from the denial of a petition for a writ of habeas corpus. The petitioner, Thomas Evans, was found to be a habitual criminal and was sentenced to a mandatory minimum of from 10 to 15 years' imprisonment.

Evans was erroneously discharged before serving the required sentence. Upon discovery of the error, the State sought an arrest and commitment warrant for the return of Evans to the Nebraska Department of Correctional Services (Department).

The district court ordered Evans recommitted to serve the remainder of his sentence. Evans filed an amended petition for writ of habeas corpus, which was dismissed with prejudice. Evans appeals. We affirm.

## BACKGROUND

Evans was convicted of burglary and determined to be a habitual criminal. His sentence carried a mandatory minimum of 10 years' imprisonment due to the habitual criminal enhancement.[1] He was sentenced to 10 to 15 years' imprisonment with 269 days' credit for time served.

On November 19, 2013, Evans was erroneously discharged by the Department prior to completing his lawful sentence. At the time of discharge, he had served the 10-year mandatory minimum sentence, but still had 2½ years remaining before he would be eligible for mandatory discharge.

Upon discovery of the error in June 2014, the State sought an arrest and commitment warrant for the return of Evans to the Department to serve the remainder of his sentence. The State's motion was supported by the affidavit of Michael Kenney, the then director of the Department, which affidavit stated that the Department "erroneously released [Evans] from custody prior to his mandatory discharge date by erroneously deducting good time credit from [Evans'] mandatory minimum sentence." The district court issued an arrest and commitment warrant on June 26, 2014, and Evans was taken back into custody on June 29. He has since been paroled and is projected to be released from parole on May 19, 2016.

Evans petitioned for a writ of habeas corpus in the district court for Lancaster County, Nebraska, challenging the Department's continuing exercise of custody. During the hearing on the writ, Evans offered numerous exhibits that had been disclosed during the Nebraska Legislature's special investigative committee hearings on this matter, including a memorandum written by a Department official regarding the Department's policy for calculating an inmate's discharge date involving a mandatory minimum term. It states, in part:

> If the court-imposed maximum term is the same as the statutory mandatory minimum term, the inmate must

---

[1] See Neb. Rev. Stat. § 29-2221 (Reissue 2008).

serve the entire mandatory minimum term, minus any credit for time served towards his mandatory discharge. If the court imposed maximum term is longer than the mandatory minimum term, the mandatory discharge date with good time is compared to mandatory minimum without good time. The mandatory discharge date will be the longer of the two dates.

For example, if the court imposed a maximum term of 15 years for a habitual criminal conviction, the discharge date would be changed to 10 years. If the court[-]imposed . . . maximum term was 20 years or longer, then the discharge date would be calculated in the normal manner.

This policy had been in existence since at least 1996, and the Department had continued to calculate discharge dates in this manner even after our decision in *State v. Castillas*.[2] In *Castillas*, we held that good time reductions did not apply to mandatory minimum sentences and we set forth the specific method for computing parole eligibility and mandatory discharge dates for sentences involving a mandatory minimum. Good time credit cannot be applied to the maximum portion of the sentence before the mandatory minimum sentence has been served.[3] It applies only after the mandatory minimum has been served.[4]

The district court dismissed Evans' habeas petition with prejudice. Evans appeals from that judgment.

## ASSIGNMENTS OF ERROR

Evans assigns that the district court erred in denying his petition for writ of habeas corpus. He asserts that the commitment order entered on June 26, 2014, was void and unlawful for the following reasons: (1) the unconditional discharge of Evans was within the discretion of the Department and

---

[2] *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013).

[3] *Id.*

[4] *Id.*

consistent with the Department's policy that had been in existence since at least September 1996, (2) the affirmative actions of the Department established a waiver such that Evans could not be returned to custody, and (3) the procedures used to obtain the arrest and commitment warrant were so lacking in fundamental due process rights so as to be void and without jurisdiction.

## STANDARD OF REVIEW

[1] On appeal of a habeas petition, an appellate court reviews the trial court's factual findings for clear error and its conclusions of law de novo.[5]

## ANALYSIS

[2,3] Evans claims the commitment order directing his reincarceration was void and unlawful. The habeas corpus writ provides illegally detained prisoners with a mechanism for challenging the legality of a person's detention, imprisonment, or custodial deprivation of liberty.[6] Although Evans has been paroled, we have held that a parolee is "'in custody under sentence'" and may seek relief through our habeas corpus statute.[7] It is Evans' position that his sentence has been fully served and that he is being held illegally.

[4,5] To secure habeas corpus relief, the prisoner must show that he or she is being illegally detained and is entitled to the benefits of the writ.[8] In a petition for writ of habeas corpus, if the plaintiff sets forth facts which, if true, would entitle him or her to discharge, then the writ is a matter of right, the plaintiff should be produced, and a hearing should be held thereon to determine questions of fact presented.[9] If

---

[5] *Anderson v. Houston*, 274 Neb. 916, 744 N.W.2d 410 (2008).

[6] *Caton v. State*, 291 Neb. 939, 869 N.W.2d 911 (2015).

[7] *Id.* at 942, 869 N.W.2d at 914.

[8] *Anderson v. Houston, supra* note 5.

[9] *Rehbein v. Clarke*, 257 Neb. 406, 598 N.W.2d 39 (1999).

the plaintiff fails to show by the facts alleged in the petition that he or she is entitled to relief, then the relief is denied.[10]

## JURISDICTION

Evans argues that once an inmate has completed the mandatory minimum sentence, the determination of discretionary release on parole and/or unconditional discharge is within the exclusive jurisdiction of the Department. He therefore asserts the district court lacked jurisdiction to issue an arrest and commitment warrant once the Department issued him a certificate of discharge. In support of this argument, Evans points to Neb. Const. art. IV, § 19, which directs that the management and control of all state penal institutions shall be vested as determined by the Legislature. He argues that pursuant to Neb. Rev. Stat. § 83-1,118 (Reissue 2014), the Legislature vested the authority to determine an inmate's release date with the Department.

Evans' argument is misplaced. Section 83-1,118(4) provides that "[t]he [D]epartment shall discharge a committed offender from the custody of the [D]epartment when the time served in the facility equals the maximum term less good time." Evans' maximum term less good time was 12½ years, but he was discharged after serving only 10 years. The error was in the computation of the amount of credit for good time. Because Evans was not entitled to good time credit on the 10-year mandatory minimum portion of his sentence, the Department had no authority to credit him with good time for that portion of his sentence. Therefore, the Department acted beyond its authority in discharging Evans prior to the completion of his lawful sentence. It had the authority to parole Evans after he served the mandatory minimum term of 10 years, but it did not have the authority to absolutely discharge him until he had served 12½ years.

---

[10] *Id.*

[6,7] A writ of habeas corpus will not lie to discharge a person from a sentence of penal servitude where the court imposing the sentence had jurisdiction of the offense and the person of the defendant, and the sentence was within the power of the court to impose, unless the sentence has been fully served and the prisoner is being illegally held.[11] Here, it is not disputed that the district court had jurisdiction of the offense and of Evans' person at the time of his conviction and sentencing in 2004, and the sentence was within the power of the district court to impose. A court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect.[12] The court had jurisdiction to sentence Evans, and it had the power to enforce its sentencing order.

### Waiver Doctrine

Evans argues that the Department's longstanding policy of allowing credit for good time against mandatory minimum sentences constituted a waiver of the requirement that those inmates be returned to custody to serve the remainder of the sentences imposed. Evans relies upon *Shields v. Beto*,[13] in which a Texas inmate was extradited to Louisiana and then released on parole in Louisiana 10 years later, before having completed his sentence in Texas. Eighteen years after his release in Louisiana, the State of Texas sought to compel the inmate to serve the remainder of his Texas sentence. The Fifth Circuit held that Texas had demonstrated such a lack of interest in the inmate as to waive jurisdiction over him. A similar waiver theory was accepted by the Eighth Circuit in a case involving the inaction of a U.S. marshal for 7 years before seeking to arrest the petitioner.[14] These cases are

---

[11] *Berumen v. Casady*, 245 Neb. 936, 515 N.W.2d 816 (1994).

[12] *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994).

[13] *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967).

[14] See *Shelton v. Ciccone*, 578 F.2d 1241 (8th Cir. 1978).

readily distinguishable, because they were based upon inaction by state or government officials for such a length of time and evidenced such a lack of interest in the defendant as to constitute a waiver of jurisdiction over the defendant.

We reject Evans' claim of waiver. We previously analyzed waiver and other doctrines designed to grant relief to prematurely released prisoners in *Anderson v. Houston*.[15] David J. Anderson was an inmate at the Nebraska State Penitentiary. He was serving a prison sentence of 3 to 5 years. The Department mistakenly released Anderson after 3 months of his sentence. When the Department discovered its mistake, it moved for capias and notice of hearing. After the hearing, the court ordered law enforcement to arrest Anderson. For reasons unknown, the clerk did not issue the warrant for about 14 months. Subsequently, Anderson was arrested during a routine traffic stop and was returned to the penitentiary. He then filed a writ of habeas corpus in the district court. The court held an evidentiary hearing to address the merits of Anderson's habeas claim and granted the writ. The Department appealed.

On appeal, Anderson argued that he was entitled to day-for-day credit toward his sentence for the time he spent at liberty due to his erroneous early release. He claimed that the Department was obligated to release him no later than the date his sentence was originally set to expire and that detaining him beyond that date was illegal. The Department claimed that he was not entitled to such credit and that the time spent at liberty should be added to the sentence.

In *Anderson*, we discussed three distinct theories employed by courts for granting relief to a prematurely released prisoner.[16] The first theory was based on the notions of due process and was referred to as the "'waiver of jurisdiction theory.'"[17]

---

[15] *Anderson v. Houston, supra* note 5.

[16] *Id*.

[17] *Id.* at 925, 744 N.W.2d at 418 (quoting *Schwichtenberg v. ADOC*, 190 Ariz. 574, 951 P.2d 449 (1997)).

This waiver was applied when the premature release resulted from gross negligence by prison officials and lasted for a long period of time.[18] The government was said to have waived its right to reincarcerate the prisoner, and the remedy was a complete exoneration of the prisoner's sentence.[19]

The second theory was known as the "'estoppel theory.'"[20] Under this theory, the government was estopped from reincarcerating the prisoner if (1) the government knew the facts surrounding the release, (2) the government intended that the prisoner would rely on the government's actions or acted in a manner that the prisoner had a right to rely on them, (3) the prisoner was ignorant of the facts, and (4) the prisoner relied on the government's actions to his or her detriment.[21]

The third theory was to grant a prisoner day-for-day credit for the time spent at liberty.[22] In our analysis, we noted that numerous federal appellate courts have held that the Due Process Clause did not require credit for the time spent at liberty.[23] We stated that credit for time spent at liberty was a common-law doctrine known as the "'equitable doctrine.'"[24]

In *Anderson*, we declined to adopt the waiver of jurisdiction or the estoppel theory. We concluded that a prematurely released prisoner could be granted day-for-day credit for the

---

[18] See *In re Roach*, 150 Wash. 2d 29, 74 P.3d 134 (2003). See, also, *Schwichtenberg v. ADOC, supra* note 17.

[19] See *id.*

[20] *Anderson v. Houston, supra* note 5, 274 Neb. at 925, 744 N.W.2d at 419 (quoting *U.S. v. Martinez*, 837 F.2d 861 (9th Cir. 1988)).

[21] *Id.* (citing *Green v. Christiansen*, 732 F.2d 1397 (9th Cir. 1984)).

[22] See *In re Roach, supra* note 18.

[23] *Anderson v. Houston, supra* note 5. See, e.g., *Vega v. U.S.*, 493 F.3d 310 (3d Cir. 2007); *Thompson v. Cockrell*, 263 F.3d 423 (5th Cir. 2001) (superseded by statute as stated in *Rhodes v. Thaler*, 713 F.3d 264 (5th Cir. 2013)); *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999); *Dunne v. Keohane*, 14 F.3d 335 (7th Cir. 1994).

[24] *Anderson v. Houston, supra* note 5, 274 Neb. at 926, 744 N.W.2d at 419 (quoting *Tyler v. Houston*, 273 Neb. 100, 728 N.W.2d 549 (2007)).

time spent at liberty where equity demanded such application. Such credit is unavailable to prisoners who are aware of the error in their early release and do not inform the Department of the error. Such credit would not be given if the individual committed additional crimes while at liberty.

In the case at bar, the Department did not have the authority to release Evans prior to the completion of his sentence imposed by the court. The appropriate remedy would be to credit Evans' time spent at liberty to the remaining time on his sentence provided Evans commits no crimes while at liberty. The State does not contest the determination that Evans should receive credit for his time spent at liberty.

## Due Process

Evans claims he was denied due process in the manner in which the State sought the arrest and commitment warrant for his return to custody. He asserts that he was not afforded notice, a hearing, the right to confrontation, or the right to counsel before his rearrest and reincarceration. He argues due process should have allowed him to contest the conclusory affidavit of then Director Kenney, have an evidentiary hearing, and raise the jurisdictional claims now being raised on appeal. He claims that the failure to provide any due process renders the arrest and commitment warrant void and beyond the authority and jurisdiction of the district court.

[8] Evans' claims of denial of due process involving his rearrest and recommitment do not challenge the validity of the original judgment of conviction or sentence. A writ of habeas corpus is a proper remedy only upon a showing that the judgment, sentence, and commitment are void.[25]

[9] To release a person from a sentence of imprisonment by habeas corpus, it must appear that the sentence was absolutely void.[26] Evans' due process assertion is based upon his

---

[25] *Berumen v. Casady, supra* note 11.

[26] *Piercy v. Parratt*, 202 Neb. 102, 273 N.W.2d 689 (1979).

claim that he had completed his sentence and was being held illegally. Evans claims that he had a constitutionally protected "liberty" interest in the June 26, 2014, proceedings wherein the court ordered his rearrest and reincarceration.[27]

[10,11] Applying the Due Process Clause to the facts of any given case is an "'uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.'"[28] Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.[29]

The governmental function was the rearrest and reincarceration of Evans who had been erroneously discharged 2½ years before his mandatory release date. The private interest affected was Evan's liberty interest in being free from confinement. We conclude that the rearrest and reincarceration of Evans did not offend due process because Evans had not completed his sentence and did not yet have a right to be free from confinement.

Evans was not given a hearing before he was rearrested. But before an arrest and commitment warrant could be issued, the Department was required to make a prima facie case before an impartial judge that Evans had not fully served his sentence and should not have been released from the Department's custody. The process did not end with Evans' rearrest. He was subsequently given an evidentiary hearing on his petition for a writ of habeas corpus. At that hearing, Evans was

---

[27] Brief for appellant at 43.

[28] *State v. Shambley*, 281 Neb. 317, 324, 795 N.W.2d 884, 891 (2011) (quoting *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)).

[29] *State v. Shambley, supra* note 28.

given the opportunity to contest the actions taken by the State and to have a determination of whether he had completed the requirements of his sentence.

We agree with the district court's conclusion that the predetention procedures coupled with the postdetention hearing on the petition satisfied due process.

## CONCLUSION

Evans has not shown that he completed the terms of his sentence and that he is being illegally detained. We conclude that his petition for writ of habeas corpus should be dismissed with prejudice as a matter of law.

We affirm the judgment of the district court that dismissed with prejudice Evans' amended petition for writ of habeas corpus.

AFFIRMED.